**IN THE**

**UNITED STATES COURT OF APPEALS**

**FOR THE SEVENTH CIRCUIT**

**NO. 25-1327**

| | | |
|---|---|---|
| HIGH PERFORMANCE ALLOYS, INC, | ) | Appeal from the United States |
| | ) | District Court for the Southern District |
| Defendant-Appellant | ) | of Indiana |
| | ) | |
| v. | ) | Case No. 1:23-cv-01875-SEB-MG |
| | ) | |
| INSURANCE COMPANY | ) | |
| OF THE WEST, | ) | |
| | ) | |
| Plaintiff-Appellee | ) | |

_____

**APPELLANT'S BRIEF AND APPENDIX**

**and**

**MOTION TO CERTIFY QUESTION OF STATE LAW**

_____

Robert J. Palmer (6316-71)
Matthew J. Anderson (27511-71)
Attorneys for Appellant
**MAY • OBERFELL • LORBER LLP**
4100 Edison Lake Parkway, Ste. 100
Mishawaka, IN 46545
Phone: (574) 243-4100
Fax: (574) 232-9789
rpalmer@maylorber.com

**DISCLOSURE STATEMENT**

Case No. 25-1327

Short Title: *Insurance Company of the West v. High Performance Alloys, Inc.*

(1) The full name of every party of amicus the attorney represents in this case: High
Performance Alloys, Inc.

(2) If such party or amicus is a corporation:
    a. Its parent corporation, if any: N/A
    b. A list of its stockholders which are publicly held companies owing ten percent
       (10%) of more of the stock in the party or amicus: N/A

(3) The name of all law firms whose partners or associates have appeared for the party in the
district court or are expected to appear for the party in this Court: May Oberfell Lorber
LLP, 4100 Edison Lakes Parkway, Suite 100, Mishawaka, Indiana, 46545, (574) 243-
4100.

Attorney's signature:  _/s/___Robert J. Palmer_____

Date: October 15, 2025_____

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………………………3

TABLE OF AUTHORITIES…………………………………………………………………4

JURISDICTIONAL STATEMENT……………………………………………………………7

MOTION TO CERTIFY QUESTION OF STATE LAW……………………………………7

STATEMENT OF THE ISSUE PRESENTED…………………………………………...…11

STATEMENT OF THE CASE…………………………………………………….…..11

       Underlying Wrongful Death Action…………………………………………...13

SUMMARY OF ARGUMENT…………………………………………………..15

ARGUMENT…………………………………………………………………15

       Standard of Review………………………………………………………15

       Exclusivity of Indiana Workers Compensation Remedies………………………16

       Insurance Coverage for Intentional Torts Not Covered by
       Workers Compensation…………………………………………………..18

       Indiana's Rules of Construction for Insurance Contracts………………………..23

       Application of Indiana's Rules of Construction to the Present Case……………………24

CONCLUSION…………………………………………………………..…24

CERTIFICATE OF COMPLIANCE…………………………………………….……26

APPENDIX

CERTIFICATION OF SERVICE

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Allgood v. Meridan Security Insurance Company*, 836 N.E.2d 243
    (Ind. 2005)……………………………………………………………………..23

*Allstate Insurance Company v. Boles*, 481 N.E.2d 1096 (Ind. 1985)…………………………….9

*Auto Owners Insurance Company v. Benko*, 964 N.E.2d 886
    (Ind. Ct. App. 2012) *trans. denied*...……...……………………………………………...23

*Auto Owners Insurance Company v. Harvey*, 842 N.E.2d 1279
    (Ind. 2006)…………………………………………………………………….…23

*Baker v. Westinghouse Electric Corp.*, 637 N.E.2d 1271
    (Ind. 1994)……………………………………………………….… …9, 16, 17, 20

*Cavalier Manufacturing Company v. Employers Insurance of Wausau,*
    535 N.W.2d 583 (Mich. Ct. App. 1995)………………………………..………………8

*Cavalier Manufacturing Company v. Employers Insurance of Wausau,*
    564 N.W.2d 68 (Mich. Ct. App. 1997)……..…………………………………….8, 18

*Celina Insurance Group v. Zinsmeister*, 2024 U.S. Dist. LEXIS 57681 (N.D. Ind. 2024)..……..23

*Charles Besler Company v. O'Gorman* & Young Inc. 911 A.2d 47 (N.J. 2006)………………..22

*City of Gary v. Auto Owners Insurance Company*, 116 N.E.3d 1116
    (Ind. Ct. App. 2018)…………………………………………………………………...24

*Cox v. American Aggregates Corp.*, 580 N.E.2d 679 (Ind. Ct. App. 1991) *trans. denied*……....16

*FCCI Ins. Co. v. Horne*, 890 So.2d 1141 (Fla. Ct. App. 2004)………………………………22, 23

*First National Bank and Trust Corp. v. American Eurocopter Corp.*,
    378 F.3d. 682 (7th Cir. 2004)……………………………………………………….23

*Metropolitan Life Insurance Company v. Tallent*, 445 N.E.2d 990 (Ind. 1983)…………………..9

*Monroe Guarantee Insurance Company v. Monroe*, 677 N.E.2d 620
    (Ind. Ct. App. 1997) *trans. dismissed*……………………………………………..…16

*New Jersey Manufactures Insurance Company v. Delta Plastics Corp.*,
    883 A.2d 399 (N.J. Ct. App. 2005)…………………………………………………8, 22

*Plastics Engineering Company v. Liberty Mutual Insurance Company*,
316 Fed. Appx. 501 (7th Cir. 2009)……………………………………………………9

*Property-Owners Insurance Company v. Virk Boyz Liquor Stores, LLC*,
219 F. Supp.3d 868 (N.D. Ind. 2016)……………………………………………...…..24

*Reliance Nat'l Ins. Co. v. Vitale*, 183 F.Supp.2d 506 (D. Conn. 2001)…………………………23

*Royal Indemnity Company v. Soneco/Northeastern, Inc.*, 183 F. Supp.2d 526
(D. Conn. 2002)……………………………………………………………………...…8, 20

*State Farm Mutual Auto Insurance Company v. Pate*, 275 F.3d 666
(7th Cir. 2001)…………………………………………………………………….………10

*Tippmann v. Hensler*, 716 N.E.2d 372 (Ind. 1999)……………………………………....16

*Transamerica Insurance Company v. Henry*, 563 N.E.2d 1265 (Ind. 1990)………………......9

*Travelers Indemnity Company v. PCR Inc.*, 326 F.3d 1190 (11th Cir. 2003)………………………9

*Traveler's Indemnity Company v. PCR Inc.*, 889 So.2d 779 (Fla. 2004)……….…….8, 9, 20, 21

*Tribbett v. Tay Mor Industries, Inc.,* 471 N.E.2d 332 (Ind. Ct. App. 1984)………………......16

*Trisler v. Indiana Insurance*, 575 N.E.2d 1021 (Ind. Ct. App. 1991)……………....……23, 24

*United National Insurance Company v. DePrizio,* 705 N.E.2d 455 (Ind. 1999)…………………9

*Wagner v. Yates*, 912 N.E.2d 805 (Ind. 2009)……………………………………………………23

*Wisconsin Education Association Counsel v. Walker*, 705 F.3d 640
(7th Cir. 2013)……………………………………………………………………………16

*Wolf Corp. v. Thompson*, 609 N.E.2d 1170 (Ind. Ct. App. 1993)……………………………..16

*Wright v. American States Insurance Co.*, 765 N.E.2d 690
(Ind. Ct. App. 2002)……………………………………………………………………...23

*Ziebart International Corp v. CNA Insurance Companies*, 78 F.3d 245
(6th Cir. 1996)……………………………………………………………………….8, 22

**Rules**

Ind. App. Rule 64……………………………………..…………………………………10

**Statutes**

Ind. Code §5-2-6.1……………………………………………………………………...…………16

Ind. Code. §22-3-2-6…………………………………………………………………………..16

28 U.S.C. §1291………………………………………….……………………………..7

28 U.S.C. §1332………………………………...……………………………………7

## JURISDICTIONAL STATEMENT

The United States District Court for the Southern District of Indiana had jurisdiction pursuant to 28 U.S.C. §1332 because the action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

Plaintiff/Appellee, Insurance Company of the West, is a corporation organized and existing under the laws of the State of California with its principal place of business in California. It is therefore a citizen of the State of California. Defendant/Appellant, High Performance Alloys, Inc., is a corporation organized and existing under the laws of Indiana with its principal place of business in Indiana. It is therefore a citizen of the State of Indiana.

Defendant/Appellee, Sara Sullivan, as Wife and Personal Representative in the Estate of Elliott Sullivan, Deceased, is a resident of Howard County, Indiana and is therefore a citizen of the State of Indiana.

The district court entered a final judgment on January 29, 2025.

No post-judgment pleadings were filed.

This appeal is from a judgment which finally adjudicated all the claims with respect to all the parties. The jurisdiction of the United States Court of Appeals for the Seventh Circuit is based on 28 U.S.C. §1291.

## MOTION TO CERTIFY QUESTION OF STATE LAW

The issue before this Court is a matter of state law regarding the C-5 exclusion for "bodily injury intentionally caused or aggravated by you" in an employer's workers compensation and employer's liability insurance policy. More specifically, the issue is whether there is a duty to defend and indemnify certain types of intentional torts, which remove an employee's claim from workers compensation laws, under the employer's liability

policy. The district court, in a footnote without any analysis, concluded that intentional torts are not covered due to the policy exclusion for intentional harm. (App. at 12).

The issue has not been addressed by Indiana appellate courts. However, courts applying the laws of Michigan, Connecticut, Florida, and New Jersey have resolved the issue in favor of insurance coverage with respect to certain intentional torts. *Cavalier Manufacturing Company v. Employers Insurance of Wausau,* 564 N.W.2d 68 (Mich. Ct. App. 1997); *Royal Indemnity Company v. Soneco/Northeastern, Inc.*, 183 F. Supp.2d 526 (D. Conn. 2002); *Traveler's Indemnity Company v. PCR Inc*., 889 So.2d 779 (Fla. 2004); *New Jersey Manufactures Insurance Company v. Delta Plastics Corp*., 883 A.2d 399 (N.J. Ct. App. 2005). *Traveler's Insurance Company* was decided by the Florida Supreme Court on certified questions from the Eleventh Circuit Court of Appeals.

Most cases ruling in favor of insurance coverage divide intentional torts, which exclude claims from workers compensation law, into two categories. One category includes injuries which the employer subjectively intends to inflict injury on the employee. The courts have ruled that there is no coverage for such intentional torts. The second category of intentional torts involves an intentional act which the employer has knowledge that is substantially certain to cause injuries.[1]  The courts have ruled that these types of intentional acts are not excluded by the C-5 exclusion for bodily injury caused or aggravated by the employer.

The Indiana Supreme Court has similarly recognized two categories of intentional torts which are excluded from the Indiana Workers' Compensation Act. Those categories are: 1) a deliberate intent to inflict an injury; and 2) actual knowledge that an injury is certain to occur.

---

[1] Michigan law requires that the employer have actual knowledge that an injury was "certain" to occur. *Cavalier Manufacturing Company v. Employers Insurance of Wausau,* 535 N.W.2d 583, 586, (Mich. Ct. App. 1995); *Ziebart International Corp v. CNA Insurance Companies*, 78 F.3d 245, 249 (6th Cir. 1996).

*Baker v. Westinghouse Electric Corp.*, 637 N.E.2d 1271, 1275 (Ind. 1994). The Indiana Supreme Court, however, has not decided whether the category of "actual knowledge that an injury is certain to occur" is excluded by the C-5 exclusion of the employer's liability policy.

The Eleventh Circuit Court of Appeals when faced with the same issue in *Travelers Indemnity Company v. PCR Inc.*, 326 F.3d 1190 (11th Cir. 2003) certified the issue to the Florida Supreme Court. The two questions certified by the Eleventh Circuit were:

> "1. Does Florida insurance law require a reading of specific intent into an insurance clause excepting from liability coverage for '[b]odily injury intentionally caused or aggravated' by the insured?
>
> 2. Is [employer] in this case entitled to liability coverage based on the language of this policy agreement, read in the light of Florida's law of interpreting insurance policies."

326 F.3d at 1194. The Florida Supreme Court answered both questions in the affirmative. *Travelers Indemnity Company v. PCR Inc.,* 889 So.2d 779, 795-796 (Fla. 2004). The Florida Supreme Court's decision was based, partially, on the public policy of the state on the question of whether public policy prohibits an employer from insuring against the risk of liability arising out of the substantially-certain standard. 889 So.2d at 796.

A state's supreme court is uniquely qualified to render decisions regarding public policy and interpretation of insurance policies under state law. *See generally. Plastics Engineering Company v. Liberty Mutual Insurance Company*, 316 Fed. Appx. 501 (7th Cir. 2009); *United National Insurance Company v. DePrizio,* 705 N.E.2d 455 (Ind. 1999); *Transamerica Insurance Company v. Henry*, 563 N.E.2d 1265 (Ind. 1990); *Allstate Insurance Company v. Boles*, 481 N.E.2d 1096 (Ind. 1985); *Metropolitan Life Insurance Company v. Tallent*, 445 N.E.2d 990 (Ind. 1983).

Certification of state law questions under Circuit Rule 52 and Indiana Rules of Procedure, Appellate Rule 64 is appropriate when the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue. *State Farm Mutual Auto Insurance Company v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001). The present case meets the criteria. The allegations against HPA in the underlying wrongful death action include conduct along the entire spectrum from gross negligence, to reckless and wanton to "actual intent." The "substantial-certainly' standard necessarily falls within this spectrum. A ruling on whether the policy exclusion covers such actions will be determinative of this declaratory judgment action on the issue of coverage. Neither the Indiana Supreme Court, nor the Indiana Cour of Appeals, has had an opportunity to illuminate a clear path on the issue. In light of the prevalence of the identical policy exclusion in employer's workers compensation and employer's liability insurance policies, combined with employees' continued attempts to plead around the exclusivity of workers compensation law, the issue before this Court will likely recur in other cases. Finally, an employer's insurance coverage for different categories of intentional conduct is a matter of vital public concern for employers and employees alike. This Court should therefore certify the question of whether the C-5 exclusion of an employer's insurance policy applies to an employer's intentional tort which meets only substantive-certainty test of intentional torts excluded from the Indiana Workers Compensation Act.

## STATEMENT OF THE ISSUE PRESENTED

Whether an insurer has a duty to defend and indemnify an employer's intentional torts for acting with actual knowledge that an injury is certain, which remove an employee's claim from workers compensation laws, under the employer's liability policy or whether such conduct falls with the C-5 policy exclusion for "bodily injury intentionally caused or aggravated" by the employer.

## STATEMENT OF THE CASE

This is appeal from a declaratory judgment in favor of Insurance Company of the West (ICW) against High Performance Alloys, Inc. (HPA) arising out of a wrongful death lawsuit filed by Sarah Sullivan as Wife and Personal Representative of the Estate of Elliot Sullivan, Deceased. ICW sought a declaration that it does not owe a duty to defend or indemnify HPA under HPA's workers compensation and employer's liability insurance policy which excluded coverage for any obligation imposed by a workers compensation law or for bodily injury intentionally caused or aggravated by the insured. HPA filed a counterclaim for declaratory judgment seeking a declaration that ICW has a duty to defend and indemnify the claims of the underlying lawsuit.

The insurance policy provides in relevant part:

**A. How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily injury by disease….

**B. We Will Pay**

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance. . . .

**C.** Exclusions

This insurance does not cover:

\*\*\*

4. Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. Bodily injury intentionally caused or aggravated by you;

\*\*\*

11. Fines or penalties imposed for violation of federal or state law;

(App. at 5-6).

ICW filed a motion for judgment on the pleadings, asserting that it had no duty to defend or indemnify HPA in the underlying wrongful death action under an employer's liability policy because if the underlying action was not covered by workers compensation, damages were excluded under an exclusion for "any obligation imposed by workers compensation. . . ." (DKT # 32). ICW alternatively argued that intentional acts of the employer which would remove the underlying action from workers compensation must be intentional and therefore excluded by the C-5 exclusion of the policy for "bodily injury intentionally caused or aggravated by you."

HPA filed a motion for summary judgment contending that based on the allegations of the complaint and facts discovered through reasonable investigation, ICW owed a duty to defend and indemnify HPA under the employer's liability provisions of the policy. (DKT # 34).

The district court granted ICW's motion for judgment on the pleadings and denied HPA's motion for summary judgment on January 29, 2025. (App. at 1). The court ruled that the allegations alleged in the underlying lawsuit, even if true fell within the exclusions to the policy and therefore ICW had no duty to either defend or indemnify HPA under the employer's liability policy.

## **Underlying Wrongful Death Action**

The underlying wrongful death action was filed against Ajax/CECO/Erie Press, Textron, Inc., and HPA. (DKT # 35-1). The relevant allegations to all causes of action state that Elliot Sullivan died on August 12, 2022, while working as a plant manager for HPA inside the HPA facility. On that date, configuration tests were being run on an Erie Forge Press. The Erie Forge Press had metal bars, referred to as "shims," or "hard-stops" on each corner of the bolster plate of the Erie Forge Press which were used to configure the machine. The Erie Forge Press lowered down until contact was made with the shims or hard-stops. The Erie Forge Press operator re-cycled the Erie Forge Press and the press head came into contact with the shims or hard-stops and began adding pressure. Once the Erie Forge Press head was lowered, and pressure was applied, the southwest corner shim or hard-stop shot out underneath the bolster plate at a high rate of speed toward the control panel, striking Elliot in the abdomen, and grazing the operator on the ear.

HPA was Elliot Sullivan's employer and owned and operated the facility at which Sullivan died. HPA was responsible for the operation of the Erie Forge Press within its facility. The policy and practice of HPA was to operate and use the machinery without protective shields to safeguard employees against being struck-by and caught-in hazards. Prior to Sullivan's death, one of the Defendants other than HPA created new software and/or system updates for the Erie Forge Press which eliminated the need for shims or hard-stops from the Erie Forge Press all together.

Sullivan's claims against Ajax/CCECO/Erie Press, Textron, Inc. included strict liability, breach of warranty, consumer fraud – violation of the Indiana Consumer Sales Act, negligence, and gross negligence.

Count VI of an Amended Complaint applies only to HPA. Count VI is entitled "Gross

Negligence as to HPA." The actual allegations state:

> "74. That, upon information and belief, Defendant HPA acted with gross negligence and in a willful and wanton manner, without regard to the safety of others.
>
> 75. That prior to Elliot's death, HPA received a 'serious violation from the Indiana Occupational and Safety Health Administration for having 'ineffectively guarded' equipment which exposed employees to potentially be 'struck-by-and caught-in hazards.'
>
> 76. That Defendant HP. had actual knowledge that its employees were in danger of being struck-by and caught-in hazards due to Defendant HPA's failure to properly safeguard the employees from the machinery using protective shields.
>
> 77. That, upon information and belief, Defendant HPA knew or should have known that the Erie Forge Press was dangerous and failed to correct its dangerous condition.
>
> 78. That, upon information and belief, Defendant HPA had actual knowledge of a Lake Erie software and/or system update that allowed 750 Ton Press operators the ability of precision during the calibration and measuring process without the need for shims or hard-stops.
>
> 79. That, upon information and belief, despite this actual knowledge, Defendant HPA failed to install this update and continued to force employees to use the hard-stops and/or shims knowingly placing employees in danger while the machine was in operation.
>
> 80. That based on this conduct, Defendant HPA acted with actual intent to cause injury to Elliot.
>
> 81. That, as a direct and proximate of the grossly negligent, and careless acts and omissions of HPA Elliot lost his life, entitling Plaintiffs to recover damages."

(DKT # 35-1 at 12-13).

HPA filed a motion to dismiss the underlying lawsuit contending that the trial

court lacked jurisdiction because of the exclusive remedies of the Workers Compensation

Act. (DKT # 35-2). The state trial court denied HPA's motion to dismiss without

explanation on July 223, 2024. The trial court certified the denial for an interlocutory appeal on August 29, 2024. The Indiana Court of Appeals denied HPA's motion to accept jurisdiction over the interlocutory appeal on October 11, 2024, in Court of Appeals Case No. 24A-CT-02219. The case therefore remains pending in the Tipton Circuit Court.

## SUMMARY OF THE ARGUMENT

Certain intentional torts alleged against an employer by an employee do not qualify as an accident and are therefore excluded by the Indiana Workers Compensation Act. These intentional torts include: 1) when the employer has a subjective intent to injure the employee; and 2) when an employer has actual knowledge that an injury is certain to occur. The appellate courts in Indiana have not decided whether the substantial-certain category of intentional torts are excluded from insurance coverage the standard C-5 liability policy exclusion for "bodily injury intentionally caused or aggravated" by the employer. Courts in several other jurisdictions have ruled that such intentional torts are not excluded from coverage. The Indiana Supreme Court would follow the lead of courts from Michigan, Florida, New Jersey, and Connecticut in ruling that such actions are not excluded from the policy. Consequently, ICW is obligated to defend and indemnify HPA in the underlying wrongful death action in which the estate of the employee alleges the full spectrum of conduct from gross negligence to reckless, willful, and wanton and intentional.

## ARGUMENT

### Standard of Review

This Court reviews a district court's ruling on a motion for summary judgment de novo, making all inferences of fact in favor of the non-moving party. The same standard applies to a

district court's ruling on a motion for a judgment on the pleadings. *Wisconsin Education Association Counsel v. Walker*, 705 F.3d 640, 645 (7th Cir. 2013).

<u>**Exclusivity of Indiana Workers Compensation Remedies**</u>

Indiana's Workers Compensation Act, like the Workers Compensation Acts of all states, provides that an employee's rights and remedies under the act are exclusive. Ind. Code. §22-3-2-6 states:

> "The rights and remedies granted to an employee subject to IC 22-3-2 through IC 22-3-6 on account of personal injury or death by accident shall exclude all rights and remedies of such employee, the employee's personal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury or death, except for remedies available under IC 5-2-6.1.[2]"

Employees often plead an employer's intentional conduct in an attempt to avoid the exclusive remedy provision. *See e.g. Monroe Guarantee Insurance Company v. Monroe*, 677 N.E.2d 620 (Ind. Ct. App. 1997) *trans. dismissed*; *Wolf Corp. v. Thompson*, 609 N.E.2d 1170 (Ind. Ct. App. 1993); *Cox v. American Aggregates Corp.*, 580 N.E.2d 679 (Ind. Ct. App. 1991) *trans. denied*; *Tribbett v. Tay Mor Industries, Inc.*, 471 N.E.2d 332 (Ind. Ct. App. 1984).

Most states have exceptions to the exclusive remedy provisions for types intentional conduct whether by statutory provision or judicial decision. *See Tippmann v. Hensler*, 716 N.E.2d 372, 378 (Ind. 1999). The Indiana Supreme Court has explicitly rejected the notion of an exception but reaches the same result through the definition of "by accident." *Baker v. Westinghouse Electric Corp.*, 637 N.E.2d 1271, 1272 (Ind. 1994) ("[W]e hold that there is no exception to the compensation act, but conclude that the act by its terms does not bar certain intentional tort actions.")

---

[2] Ind. Code §5-2-6.1-0.2 through 5-2-6.1-49 address compensation for victims of violent crime.

*Baker* also establishes the two types of intent that removes a claim from the Workers Compensation Act. Mere employer negligence or recklessness is not sufficient. "The employer that acts in the belief that it is causing an appreciable risk of harm to another may be negligent, and if the risk is great its conduct may be characterized as reckless or wanton, but is not an intentional wrong." 637 N.E.2d at 1275. "Nothing short of deliberate intent to inflict an injury, or actual knowledge that an injury is certain to occur, would exclude an act or omission from the exclusive remedy of the Worker's Compensation Act." 637 N.E.2d at 1275.

The district court noted that the allegations in the underlying wrongful death action asserted gross negligence, willful and wanton, without regard to safety of others, as well as actual intent to cause injury. (App. at 11). The court also noted that the underlying complaint alleged that Mr. Sullivan died as a direct and proximate result of High Performance's "grossly negligent and careless acts and omissions." (App. at 8). From these allegations, the court found that the allegations of the wrongful death complaint fell within the exclusive jurisdiction of Indiana's Workers Compensation Act and were excluded by the policy exclusion for any obligation imposed by workers compensation law.[3] The fact that many of the claims in the underlying wrongful death action fall within the exclusive jurisdiction of the Workers Compensation Act does not resolve the issue before this Court. The Indiana Supreme Court, in *Baker v. Westinghouse Electric Corp.*, 637 N.E.2d 1271, 1272 (Ind. 1994) held that the Workers Compensation Act, "by its terms does not bar certain intentional tort acts".

---

[3] The district court stated that ICW and HPA "agree that the gross negligence claim alleged in the *Sullivan* lawsuit falls under the exclusive jurisdiction of the Indiana's Worker's Compensation Act." (App. at 11-12). While this statement is accurate, there was no agreement that all the underlying allegations fell within the Workers Compensation Act. In fact, the state trial court denied HPA's motion to dismiss based on the exclusivity of the Workers Compensation Act.

## Insurance Coverage for Intentional Torts not Covered by Workers Compensation

The dispositive issue is not whether certain allegations of the underlying complaint fall within the workers compensation exclusion of the liability policy, but rather, do the allegations of intentional torts fall within the C-5 exclusion for bodily injury intended or aggravated by the employer. The district court attempted to resolve this issue in a footnote without any analysis of Indiana law. The footnote stated:

> "To the extent the allegations in the Sullivan lawsuit could be read to allege an intentional tort not governed by worker's compensation exclusivity, the policy's intentional harm exclusion would preclude coverage for any such claim. The case therefore turns on the applicability of the worker's compensation exclusion and we do not discuss the intentional harm exclusion further."

(App. at 12).

Contrary to the district's courts footnote, the application of the intentional harm exclusion is the very issue before the Court. Certain of an employer's intentional torts, while removing a case from workers compensation laws, are not necessarily excluded by the liability policy's exclusion for "bodily injury intentionally caused or aggravated by you." The court's assumption that simply labeling an employer's actions as an intentional tort excludes those acts from coverage is clearly erroneous.

Indiana appellate courts have not addressed coverage issues arising from the two types of intent which remove a claim from workers compensation jurisdiction. However, courts from other jurisdictions have addressed the issue and have ruled that, although there is no coverage for an employer's subjective intent to injure an employee, there is coverage when the employer has actual knowledge that an injury is certain to occur.

One of the first cases to address the issue is *Cavalier Manufacturing Company v. Employers Insurance of Wausau,* 564 N.W.2d 68 (Mich. Ct. App. 1997). Cavalier's employee

was injured when an industrial press "double tripped" while the employee was removing a product from the press. The employee's hands were crushed. The employee brought suit against the employer. In order to avoid the exclusive remedy provision of the Worker's Disability Compensation Act, the employee alleged facts meant to demonstrate that Cavalier had committed an "intentional tort" as that term is used in the Worker's Disability Compensation Act.

The insurer provided Cavalier with a workers compensation and employer's liability insurance policy. Like the policy in the present case, Wausau's policy excluded coverage for "bodily injury intentionally caused or aggravated." The employee's complaint alleged that the employer had repeatedly been cited by the Department of Labor for violations of the Michigan Occupational Safety and Health Act; that it had failed to properly instruct and train its employees not to place their hands in the die "despite having knowledge of the dangers" and despite having "actual knowledge MIOSHA statutes prohibiting hands in the die operation; that the employer provided no tongs to remove the stamped product and specifically required its employees to place their hands in the die; that employer had negligently welded a bolt to a sprocket that partially controlled the timing of the press and that the bolt had broken, thereby causing the press to double trip." The complaint, however, made no mention of an actual intent to injure.

In ruling that the exclusion for "bodily injury intentionally caused" did not encompass the allegations of the complaint, the court ruled that the intent underlying the act causing injury must actually be to cause the injury. Because, the complaint alleged conduct that, at worst, demonstrated knowledge that injuries were certain to occur, the complaint did not allege an actual intent to injure, and therefore the employee did not allege "bodily injury intentionally caused."

*Royal Indemnity Company v. Soneco/Northeastern, Inc.*, 183 F. Supp.2d 526 (D. Conn. 2002) arose under Connecticut law. The case involved two (2) employees' claims for injuries suffered while working in a trench. The employer was insured under a workers compensation and employer's liability insurance policy issued by Royal Indemnity.

The policy excluded: "any obligation imposed by a worker's compensation law or similar law." The policy also excluded "bodily injury intentionally caused or aggravated by you." Royal Indemnity argued that the complaints in the underlying actions were "carefully framed" as claims for intentional and reckless misconduct to circumvent the exclusivity provision of the workers compensation act as interpreted by the Connecticut Supreme Court. The insurer argued that claims must necessarily fall within the clear language of the policy's exclusion for intentional injury and, therefore, the insurer was not obligated to defend or indemnify the employer.

The district court disagreed. Noting that the employees alleged that the employer's actions were: "substantially certain" to result in the injuries that they sustained, they did not allege that the employer intentionally injured them or intentionally aggravated their injuries. The court ruled that the intentional acts and omissions of the employer which were substantially certain to result in injuries do not fall within the language of the policy excluding "bodily injury intentionally caused or aggravated" by the insured. 183 F.Supp.2d at 532.

The same result occurred in *Traveler's Indemnity Company v. PCR Inc.*, 889 So.2d 779 (Fla. 2004) on an issue certified by the Eleventh Circuit Court of Appeals to the Florida Supreme Court. Like the Indiana Supreme Court in *Baker*, the Supreme Court of Florida noted that its caselaw recognized that the exclusive-remedy provision of the workers compensation law did not bar an injured employee from suing his employer in tort if employee could demonstrate that his

injury was the result of an intentional tort committed against him by his employer. 889 So.2d at 782. Also, like Indiana, Florida recognizes two alternative methods for satisfying the intentional-tort exception. An injured employee may avoid the exclusive remedy provision of the workers compensation law by demonstrating that his employer "exhibited a deliberate intent to injure him" or by demonstrating that his employer engaged in conduct which was substantially certain to result in injury or death. *Id.* The substantial-certainty method calls for an objective inquiry in which the relevant question is not whether the employer actually knew that the conduct was substantially certain to result in injury or death but, rather, whether the employer should have known that its conduct was substantially certain to result in injury or death. 889 So.2d at 783. Under the substantial-certainty test, the employer's actual intent is not controlling, but rather, this method requires a court to look to the totality of the circumstances to determine whether a reasonable person would understand that the employer's conduct was substantially certain to result in injury or death to the employee. 889 So.2d at 783-84.

The Florida Supreme Court stated the insurer's argument as: "(1) the employer's liability policy covers only claims for bodily injury by accident; (2) if these underlying claims were claims for bodily injury by accident, they would be barred by the exclusive-remedy provision of Florida's workers compensation law-the only reason such claims are allowed by the exclusive-remedy provision of Florida's workers compensation law- to proceed in tort was because the claims could not be considered as claims for bodily injury by accident; therefore (3) the underlying claims, by virtue of the fact that they are not barred by the exclusive-remedy provision, are not claims for bodily injury by accident and not covered by the policy." 889 So.2d at 787. Under Florida law, the intentional tort exclusion only excludes conduct if an insured acted with a specific intent to harm the employee. 889 So.2d at 792. However, the policy

exclusion does not apply to an employer's conduct which is substantially certain to cause the employee's injuries. 889 So.2d at 796.

A similar result was reached by the appellate division of the Superior Court of New Jersey in *New Jersey Manufactures Insurance Company v. Delta Plastics Corp.*, 883 A.2d 399 (N.J. Ct. App.2005). The issue reached the court through a declaratory judgment action. The issue before the court was whether the employer's liability policy exclusion for claims of bodily injury intentionally caused applied to intentional torts committed by an employer which were excluded from workers compensation act. The court ruled that the "injury intentionally caused" exclusion from an employer's liability coverage applies only to injuries subjectively intended by the employer. 883 A2d at 403. The exclusion did not apply to intentional torts excluded from workers compensation coverage under the substantial-certainty standard. The court stated:

> "We find no reason to conclude that the C-5 'injury intentionally caused' exclusion from employers' liability coverage is as broad as the statutory [Workers' Compensation Act] intentional wrong exception. The policy exception in our view applies only to injuries subjectively intended by the employer or its agent a result consummate with the public policy against providing insurance coverage for criminal (specific intent) acts. (citation omitted) Where it otherwise (as [insurer] argues) the C-5 exclusion would come very close to eliminating meaningful Part Two coverage. (footnote omitted)"

883 A.2d at 404.

Several other courts have reached the same conclusion applying the same "bodily injury intended" exclusion from an employer's liability policy. *See e.g. Ziebart International Corp. v. CNA Insurance Companies*, 78 F.3d 245, 249 (6th Cir. 1996) ("Bodily injury intentionally caused or aggravated by [employer] are not excluded from coverage for an intentional tort where an employee willfully disregards actual malice that an injury is certain to occur.'); *Charles Besler Company v. O'Gorman* & Young Inc. 911 A.2d 47 (N.J. 2006); *FCCI Ins. Co. v. Horne*, 890

So.2d 1141 (Fla. Ct. App. 2004); *Reliance Nat'l Ins. Co. v. Vitale*, 183 F.Supp.2d 506 (D. Conn. 2001).

## Indiana's Rules of Construction for Insurance Contracts

A federal court exercising diversity jurisdiction applies the substantive law of the state in which it sits. *First National Bank and Trust Corp. v. American Eurocopter Corp.*, 378 F.3d. 682, 689 (7th Cir. 2004).

In Indiana, insurance policy interpretation is "primarily a question of law." *Wagner v. Yates*, 912 N.E.2d 805, 808 (Ind. 2009). When contractual language is clear and unambiguous, Indiana courts apply the plain and ordinary meaning. *Auto Owners Insurance Company v. Benko*, 964 N.E.2d 886, 890 (Ind. Ct. App. 2012) *trans. denied*. The court accepts an interpretation of the contract language that harmonizes the provisions rather than one that supports conflicting versions of the provisions. *Wright v. American States Insurance Co.*, 765 N.E.2d 690, 693 (Ind. Ct. App. 2002). Policy terms are interpreted from the perspective of an ordinary policy holder of average intelligence. *Allgood v. Meridan Security Insurance Company*, 836 N.E.2d 243, 246-47 (Ind. 2005). Any doubts as to the coverage under the policy will be construed against the insurer in order to further the policy's basic purpose of indemnity. *Auto Owners Insurance Company v. Harvey*, 842 N.E.2d 1279, 1286 (Ind. 2006).

"In a duty-to-defend action under Indiana law, the deck is stacked for the insured as the duty-to-defend is broader than coverage liability." *Celina Insurance Group v. Zinsmeister*, 2024 U.S. Dist. LEXIS 57681, *10 (N.D. Ind. 2024) (quoting *Trisler v. Indiana Insurance*, 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991)). "It is the nature of the claim, not its merits, which establishes the insurer's duty to defend." *Id*. "Consequently, if it is determined that an insurer has a

contractual duty to defend a suit based risks it has insured, the insurer will not be relieved of that obligation, regardless of the merits of the claims." *Id.*

The insurer's duty-to-defend is determined not only by the allegations of the complaint, but also by those facts known or ascertainable by the insurer after reasonable investigation. *Trisler*, 575 N.E.2d at 1023. The insurer must provide a defense unless "there is no possible factual or legal basis on which the insurer might be obligated to indemnify." *Property-Owners Insurance Company v. Virk Boyz Liquor Stores, LLC*, 219 F. Supp.3d 868, 873 (N.D. Ind. 2016) (applying Indiana Law); *see also City of Gary v. Auto Owners Insurance Company*, 116 N.E.3d 1116, 1121 (Ind. Ct. App. 2018) ("The duty-to-defend is triggered when the complaint alleges facts that might fall within the coverage of the policy."). So long as there is one claim that falls within the scope of coverage, the insurer must provide a defense for its insured for the entire lawsuit. *Property-Owners Insurance*, 219 F. Supp.3d at 873.

### Application of Indiana's Rules of Construction to the Present Case

The underlying wrongful death complaint alleges actions covering the entire spectrum of conduct from gross negligence through reckless, willful, and wanton and intentional. Any reasonable investigation of those allegations would reveal the possibility of a claim for intentional conduct with knowledge that an injury was certain to occur. Because there is a possible factual or legal basis on which the intentional actions of the insurer do not fall within the policy exclusion, ICW has a duty to defend and indemnify HPA. ICW must defend for the entire lawsuit as long as there is one claim that possibly falls within the scope of coverage.

### CONCLUSION

For the foregoing reasons, Appellant, High Performance Alloys, Inc., respectfully requests the Court to certify the issues before it to the Indiana Supreme Court. Alternatively,

Appellant requests the Court to reverse the judgment of the district court and remand for entry of

judgment in favor of High Performance Alloys, Inc., on its counter-claim for declaratory

judgment.


Respectfully submitted by,

/s/Robert J. Palmer
Robert J. Palmer (6316-71)
Matthew J. Anderson (27511-71)
Attorneys for Appellant

**MAY • OBERFELL • LORBER LLP**
4100 Edison Lakes Parkway, Suite 100
Mishawaka, IN 46545
Telephone: (574) 243-4100
Facsimile: (574) 232-9789

## CERTIFICATION OF COMPLIANCE

1. This document complies with the word limit of Fed.R.App.P. 32(a)(7) because, excluding the parts of the brief exempted by Fed.R.App.P. 32(f), this brief contains 5,393 words.

2. This brief complies with the typeface requirements of Fed.R.App.P 32(a)(5) and the type-style requirements of Fed.R.App.P 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 2022 in Times New Roman 12-point with 11-point footnotes.

/s/ Robert J. Palmer

October 15, 2025                                    Robert J. Palmer (6316-71)

# APPENDIX

## Table of Contents

Circuit Rule 30(d) Statement……………….………...……………………………………......……..1

Judgement (January 29, 2025)…………………………………………………………………………2

Order on Pending Motions (January 29, 2025)…………………………………………………....4

Certificate of Service…………………………………………………………………………...…19

## CIRCUIT RULE 30(d) STATEMENT

The undersigned hereby certifies, pursuant to Circuit Rule 30(d), that the Appendix to this brief contains all materials required by Circuit Rules 30(a) and (b). The Appendix materials are in searchable digital form where available.

/s/Robert J. Palmer
Robert J. Palmer

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| INSURANCE COMPANY OF THE WEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-01875-SEB-MG |
| | ) | |
| HIGH PERFORMANCE ALLOYS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| HIGH PERFORMANCE ALLOYS, INC., | ) | |
| | ) | |
| Counter Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INSURANCE COMPANY OF THE WEST, | ) | |
| | ) | |
| Counter Defendant. | ) | |

**JUDGMENT**

Pursuant to the Court's ruling entered on this date, final judgment is hereby entered

in favor of Plaintiff and against Defendants on Plaintiff's request for declaratory relief,

holding that Plaintiff has no duty to defend or indemnify Defendant High Performance

Alloys, Inc. in the underlying lawsuit.

Date:    1/29/2025

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

1

2

Distribution:

Matthew James Anderson
May Oberfell Lorber
manderson@maylorber.com

Trevor J. Crossen
CROSSEN LAW FIRM, LLC
trevor@crossenlawfirm.com

Mary E. McClellan
Quintairos, Prieto, Wood & Boyer
mary.mcclellan@qpwblaw.com

William Kilburn McVisk
Tressler LLP
wmcvisk@tresslerllp.com

Robert J. Palmer
MAY OBERFELL AND LORBER
rpalmer@maylorber.com

Colleen N Savage
Sgro and Roger
csavage@sgroandroger.com

Anthony Sgro
Sgro & Roger
tsgro@sgroandroger.com

Georgianne Marie Walker
MAY OBERFELL LORBER
gwalker@maylorber.com

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| INSURANCE COMPANY OF THE WEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-01875-SEB-MG |
| | ) | |
| HIGH PERFORMANCE ALLOYS, INC., et al., | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| HIGH PERFORMANCE ALLOYS, INC., | ) | |
| | ) | |
| Counter Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INSURANCE COMPANY OF THE WEST, | ) | |
| | ) | |
| Counter Defendant. | ) | |

**ORDER ON PENDING MOTIONS**

Now before the Court are the Motion for Judgment on the Pleadings [Dkt. 31],

filed by Plaintiff and Counter Defendant Insurance Company of the West ("ICW") and

the Motion for Summary Judgment [Dkt. 33], filed by Defendant and Counter Claimant

High Performance Alloys, Inc. ("High Performance"). This is an insurance coverage

dispute in which ICW seeks a judgment that it has no duty to defend or indemnify High

Performance against claims asserted against it in an underlying wrongful death lawsuit.

High Performance has filed a counterclaim seeking a declaration that ICW owes a duty to

defend and indemnify it because the factual basis of the underlying lawsuit falls within

1

4

ICW's coverage of High Performance. For the reasons detailed below, we <u>GRANT</u> Plaintiff and Counter Defendant's (ICW) Motion for Judgment on the Pleadings and <u>DENY</u> Defendant and Counter Claimant's (High Performance) Motion for Summary Judgment.

## **Factual Background**

### I.   **The ICW Policy**

ICW issued a Workers Compensation and Employers' Liability Insurance Policy to High Performance under policy number WIN 5057361 01 with an effective period of October 1, 2021 to October 1, 2022 (the "Policy"). The Policy provides for two kinds of coverage, Workers Compensation Insurance and Employers Liability Insurance. As relevant to this litigation, Part Two of the Policy applies to bodily injury caused by an accident, including bodily injury resulting in death, and in relevant part states as follows:

### **A. How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily injury by disease ….

### **B. We Will Pay**

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance ….

### **C. Exclusions**

This insurance does not cover:

\*\*\*

2

5

4.     Any obligation imposed by workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5.     Bodily injury intentionally caused or aggravated by you;

\*\*\*

11.    Fines or penalties imposed for violation of federal or state law; ....

Dkt. 1-5.

## II.    The Underlying Litigation

On August 11, 2023, Sara Sullivan, as Wife and Representative of the Estate of Elliot Sullivan, filed a lawsuit in Tipton Circuit Court against High Performance and other entities not involved in this litigation, alleging that her husband, Elliot Sullivan, was employed as a plant manager for High Performance at its facility located in Tipton County, Indiana, when he sustained personal injuries while working, resulting in his death (the "*Sullivan* Lawsuit"). In summary, the complaint in the *Sullivan* Lawsuit alleges as follows:[1]

On August 12, 2022, High Performance employees were running configuration tests on a 750-Ton Large Erie Forge Press (the "Erie Forge Press") inside High Performance's Tipton facility. Dkt. 1-5 ¶ 7; ¶ 25. The Erie Forge Press is equipped on each corner of its bolster plate with metal bars, referred to as "shims" or "hard-stops",

---

[1] ICW attached the original complaint filed in the *Sullivan* Lawsuit to its complaint in this case. High Performance attached the amended complaint filed in the *Sullivan* Lawsuit to its motion for summary judgment. The parties have not pointed us to any differences relevant to our determination of the issues before us. Accordingly, we have cited to the original complaint as that was the version attached to the pleadings.

6

which are used to configure the machine. *Id.* at 2 ¶ 8. During the August 12 testing, the Erie Forge Press operator lowered the head of the press, bringing it into contact with the shims, and as pressure was applied to the device, the southwest corner shim shot out from underneath the bolster plate at a high rate of speed toward the control panel and struck Mr. Sullivan in the abdomen. *Id.* ¶ 10, ¶ 25. Mr. Sullivan died as a result of the injuries sustained from the impact. *Id.* ¶ 25.

Prior to the incident, High Performance had received a "serious" violation from the Indiana Occupational Safety and Health Administration for having "ineffectively guarded" equipment and thus is alleged to have had actual knowledge that its employees were in danger of being struck by and caught in hazards due to its policy and practice of operating machinery without protective shields to properly safeguard its employees. *Id.* ¶¶ 74–75. Also prior to the incident, High Performance is alleged to have had actual knowledge of a software or system update that provided Erie Forge Press operators the level of precision needed to complete the calibration and measuring process without using shims or hard-stops, but High Performance failed to install the update, forcing its employees to continue to use the shims and hard-stops to configure the machines. *Id.* ¶¶ 77–78.

Based on these allegations, the *Sullivan* Lawsuit asserts a gross negligence claim against High Performance, alleging that High Performance acted "with gross negligence and in a willful and wanton manner, without regard to the safety of others" as well as "with actual intent to cause injury to [Mr. Sullivan]" and that Mr. Sullivan died "as a

4

7

direct and proximate result" of High Performance's "grossly negligent and careless acts and omissions." *Id.* ¶¶ 73, 79, 80.

### III.   The Instant Litigation

ICW filed the instant complaint on October 18, 2023, seeking a declaratory judgment that it has no duty to defend or indemnify High Performance in the *Sullivan* Lawsuit. High Performance filed a counterclaim on December 20, 2023, seeking a declaration from the Court that ICW does have a duty to defend and indemnify it in the underlying lawsuit. Now before the Court are ICW's motion for judgment on the pleadings and High Performance's motion for summary judgment, both filed on June 7, 2024. Those motions are fully briefed and ripe for ruling.

### Legal Analysis

### I.   Applicable Legal Standards

ICW's motion for judgment on the pleadings asks the Court to rule as a matter of law that it owes no duty to defend or indemnify High Performance in the *Sullivan* Lawsuit. High Performance's responsive motion for summary judgment on its counterclaim asks, in turn, that the Court find that ICW is required to defend and indemnify High Performance in that lawsuit.

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the complaint and answer have been filed. Fed. R. Civ. P. 12(c). Where, as here, "the movant seeks to 'dispose of the case on the basis of the underlying substantive merits[,] … the appropriate standard is that applicable to summary judgment, except that the court may consider only the contents of the pleadings.'" *United States Specialty Ins. Co. v. Vill.*

5

*of Melrose Park*, 455 F. Supp. 3d 681, 687 (N.D. Ill. 2020) (quoting *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993)). Accordingly, the court applies "the same standard to each of the pending motions, except that [we] may consider undisputed facts outside of the pleadings and their attachments to resolve [the] summary judgment motion." *Admiral Ins. Co. v. Anderson*, 529 F. Supp. 3d 804, 810 (N.D. Ill. 2021). Thus, the motions will be granted only if "no genuine issues of material fact remain to be resolved and ... the [movant] is entitled to judgment as a matter of law." *Pro Assurance Speciality Ins. Co. v. Imperial Realty Co.*, 545 F. Supp. 3d 618, 620 (N.D. Ill. 2021) (citation and quotation marks omitted).

## II.    Interpretation of Insurance Contracts Under Indiana Law

There is no dispute that Indiana law governs the outcome and analysis of the issues presented in this case. In an insurance policy dispute under Indiana law, "the insured has the burden of proving that the coverage applies, and the insurer, if relying on an exclusion to deny coverage, has the burden of demonstrating that the exclusion is applicable." *Bowman, Heintz, Boscia & Vician, P.C. v. Valiant Ins. Co.*, 35 F. Supp. 3d 1015, 1023 (N.D. Ind 2014) (quotation marks and citation omitted). The interpretation of an insurance policy entails matters of law. *Westfield Companies v. Knapp*, 804 N.E.2d 1270, 1273–74 (Ind. Ct. App. 2004). Insurance contract provisions are subject to the same rules of construction as other contracts. Thus, courts must construe insurance policies "as a whole, rather than considering individual words, phrases or paragraphs." *Id.* at 1274. If the contract language is clear and unambiguous, it should be given its plain and ordinary meaning. *Newman Mfg., Inc. v. Transcon. Ins. Co.*, 871 N.E.2d 396,

6

9

401 (Ind. Ct. App. 2007). Additionally, "[i]nsurance companies are free to limit their liability, so long as they do so in a manner consistent with public policy as reflected by case or statutory law." *Gheae v. Founders Ins. Co.*, 854 N.E.2d 419, 423 (Ind. Ct. App. 2006). Thus, "[a]n insurance policy that is unambiguous must be enforced according to its terms, even those terms that limit an insurer's liability." *Haag v. Castro*, 959 N.E.2d 819, 824 (Ind. 2012) (quoting *Property-Owners Ins. Co. v. Ted's Tavern, Inc.*, 853 N.E.2d 973, 978 (Ind. Ct. App. 2006)).

Under Indiana law, "an insurer's duty to defend its insureds is broader than its coverage for liability or duty to indemnify." *Indiana Farmers Mut. Ins. Co. v. Ellison*, 679 N.E.2d 1378, 1381–82 (Ind. Ct. App. 1997), *trans. denied*. In order to determine whether an insurer has a duty to defend, Indiana courts look to the allegations contained within the complaint as well as to those facts known or ascertainable by the insurer after a reasonable investigation. *Jim Barna Log Sys. Midwest, Inc. v. General Cas. Ins. Co. of Wisconsin*, 791 N.E.2d 816, 823 (Ind. Ct. App. 2003). The complaint's allegations "give rise to a duty to defend whenever, if proved true, coverage would attach." *Federal Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 566 (7th Cir. 1997). However, "[w]hen the underlying factual basis of the complaint, even if proved true, would not result in liability under the insurance policy, the insurance company can properly refuse to defend." *Wayne Twp. Bd. of Sch. Comm'rs v. Indiana Ins. Co.*, 650 N.E.2d 1205, 1208 (Ind. Ct. App. 1995).

## III.    Discussion

The question before us here is whether the *Sullivan* Lawsuit alleges facts that, if proved true, could result in coverage under the Employers Liability Insurance part of the Policy.  As we explain below, we hold that it does not, and thus, that ICW is entitled to a declaratory judgment that it has no duty to defend or indemnify High Performance.

The *Sullivan* Lawsuit alleges a single count against High Performance for "gross negligence" based on High Performance's alleged failure to enact certain safety precautions to protect its employees, including Mr. Sullivan, from harm.  The *Sullivan* Lawsuit further alleges that, in failing to enact those safety precautions, High Performance acted "with gross negligence and in a willful and wanton matter, without regard to the safety of others" as well as "with actual intent to cause injury" to Mr. Sullivan.  Mr. Sullivan is also alleged to have died while on the job as a result of High Performance's "grossly negligent, and careless acts and omissions."

Indiana's Workers' Compensation Act "provides an employee's sole remedy against an employer for injuries occurring by accident, which arise out of and in the course of his employment."  *Summers v. Crossroads Galvanizing, LLC*, No. 4:21-CV-074-PPS-JEM, 2023 WL 7109695, at *3 (N.D. Ind. Oct. 27, 2023) (citing *Sims v. United States Fid. & Guar. Co.*, 782 N.E.2d 345, 349–50 (Ind. 2003); *Tippmann v. Hensler*, 716 N.E.2d 372, 374–75 (Ind. 1999)).  There is no dispute here that the *Sullivan* Lawsuit alleges that Mr. Sullivan was employed by High Performance and that he died while on the job as a result of High Performance's careless acts and omissions.  ICW and High Performance agree that the gross negligence claim alleged in the *Sullivan* Lawsuit

8

therefore falls under the exclusive jurisdiction of Indiana's Worker's Compensation Act
and should be dismissed on those grounds.[2]  The parties dispute, however, whether ICW
nonetheless has a duty to defend and/or indemnify High Performance in the underlying
litigation, regardless of the claim's ultimate futility under the clear terms of the statute
and the contract.

ICW argues that it has no duty to defend or indemnify because the Policy's
worker's compensation exclusion, which precludes coverage for "any obligation imposed
by workers compensation ... law ... or any similar law" applies, barring any possibility
of coverage for the gross negligence claim alleged against High Performance in the
*Sullivan* Lawsuit. High Performance, on the other hand, argues that the worker's
compensation exclusion does not bar coverage here because the plaintiff in the
underlying litigation is not claiming any entitlement to benefits under the workers'
compensation law and thus is not seeking a remedy excluded under the Policy.  High
Performance contends that, under Indiana law, the fact that the underlying plaintiff's
attempt to bypass obviously applicable workers' compensation laws is unlikely to succeed
does not relieve ICW of the duty to defend that civil claim on behalf of its insured when,
as pled, the underlying plaintiff's claim for damages falls within the scope of the Policy.

Under Indiana law, the mere fact that a claim is unlikely to succeed does not
obviate the insurer's duty to defend that claim as the duty to defend applies even to

---

[2] To the extent the allegations in the *Sullivan* Lawsuit could be read to allege an intentional tort
not governed by worker's compensation exclusivity, the Policy's intentional harm exclusion
would preclude coverage for any such claim. This case therefore turns on the applicability of the
worker's compensation exclusion and we do not discuss the intentional harm exclusion further.

"unfounded, false or fraudulent suits based upon risks it has insured." *Cincinnati Ins. Co. v. Mallon*, 409 N.E.2d 1100, 1105 (Ind. Ct. App. 1980). However, "when the underlying factual basis of the complaint, even if proved true, would not result in liability under the insurance policy, the insurance company can properly refuse to defend." *Id.* Therefore, while an insurer is not "entitled to ignore the relief the claimant actually seeks against its insured and to refuse to defend on the theory that the claimant cannot possibly prevail as a matter of law," an insurer can refuse to defend in cases where there is a "policy exclusion[] that would have applied even if the underlying claim had been valid." *Home Fed. Sav. Bank v. Ticor Title Ins. Co.*, 695 F.3d 725, 732 (7th Cir. 2012).

Here, even assuming all factual allegations in the *Sullivan* Lawsuit to be true, to wit, that High Performance was aware of a highly dangerous condition faced by its employee, Mr. Sullivan, yet still exposed him to that condition, resulting in his untimely death while on the job, such allegations would not result in liability under the Policy because the underlying complaint specifically alleges that Mr. Sullivan was employed by High Performance, that he was engaged in work at the time of his death, and that High Performance's negligent acts and omissions caused his death. The parties agree that the only recourse for the underlying plaintiff is through Indiana's workers compensation laws. We find, therefore, that the Policy's workers compensation exclusion, which excludes from coverage "any obligation imposed by workers compensation … or any similar laws" unambiguously bars coverage for the sole claim brought against High Performance in the *Sullivan* Lawsuit, thus relieving ICW of the duty to defend.

We are not persuaded by High Performance's contention that, because the *Sullivan Lawsuit* is a wrongful death suit and the remedy sought is not workers compensation benefits, the Policy's workers compensation exclusion does not apply. High Performance has not cited, nor have we found, any case "holding that exclusionary language like that used here—'any obligation imposed' by workers' compensation—comes into play only where an employee has actually applied for or obtained benefits...." *Culligan v. State Compensation Ins. Fund*, 81 Cal. App. 4th 429, 439 (Cal. Ct. App. 2000).

To the contrary, the only cases cited by either side specifically interpreting workers compensation exclusions in employers' liability policies with analogous language to that at issue here have held that "[t]he 'obligation imposed' by the workers' compensation law is readily understood to mean the obligation as an employer, under workers' compensation, to provide benefits. That inchoate obligation exists *whether or not an employee actually chooses to seek benefits*." *Id.* (emphasis added). Thus, so long as the underlying lawsuit concerns an employee subject to the remedy of workers compensation laws, courts have interpreted workers compensation exclusions similar to the exclusion at bar to exclude the employees' claims from coverage, regardless of whether they were pursuing a remedy under a workers compensation scheme. *See, e.g., Id.* at 439–40; *Seneca Ins. Co. v. Cybernet Entertainment, LLC*, 760 Fed. App'x 541, 544–45 (9 Cir. 2019) (holding that provision in employer's liability portion of the insurance policy excluding coverage for "any obligation imposed by a workers' compensation ... law" barred coverage for negligence claims alleging that the insured failed to maintain a safe workplace); *Employers Assurance Co. v. Ford Store Morgan*

*Hill, Inc.*, 608 F. Supp. 3d 930, 942 (N.D. Cal. 2022) (concluding as a matter of law that "the sole claim asserted against [the insured] in the Underlying Action—for negligent and grossly negligent breach of [the insured's] duty to provide [the employee plaintiff] with a safe work environment—falls within the scope of workers' compensation law and thus falls within the scope of the Policy's workers' compensation exclusion" set forth in the employer liability part of the insurance policy that excluded from coverage "[a]ny obligation imposed by a workers compensation ... or any similar law"); *Stephenson v. Argonaut Ins. Co.*, 125 Cal. App. 4th 962, 974 (Cal. Ct. App. 2004) (holding that workers compensation exclusion in employer liability part of the insurance policy "unambiguously eliminated any potential of coverage" for the insured in the underlying breach of contract action).

In addition to its comporting with the plain language of the exclusion, we find that this interpretation best aligns with the purpose of the two-part workers compensation and employer liability coverage provided by the Policy. As the Seventh Circuit has recognized:

> A workers compensation and employer liability policy is a standard liability insurance policy designed to insure an employer primarily for liability under workers' compensation laws, but secondarily for liability for workplace accidents not covered by such laws—for example, liability for a claim by an employee's family member injured by a workplace injury to the employee (as when an injury to a pregnant employee injures her fetus as well), or for claims for workplace injuries not covered by workers' compensation, such as injuries to farm employees or an injury to an employee by a fellow employee motivated by spite. ... Such insurance coverage fills gaps in workers' compensation law that sometimes allow an employee to sue his employer in tort, bypassing the limits on workers' compensation relief.

15

*Hayes Lemmerz Int'l, Inc. v. Ace Am. Ins. Co.*, 619 F.3d 777, 778–79 (7th Cir. 2010) (internal citations omitted). Under High Performance's construction, the "structural distinction" of the Policy "would be lost, for an employee required by the exclusivity rule to use only workers' compensation could simply choose not to use it and consequently create a duty to defend. The cost limits of the compensation bargain would be lost, all at the whim of the employee." *Culligan*, 81 Cal. App. 4th at 439.

The cases cited by High Performance in support of its position, namely, *TKK USA, Inc. v. Safety National Casualty Corporation*, 727 F.3d 782 (7th Cir. 2013), *Home Federal Savings Bank v. Ticor Title Insurance Company*, 696 F.3d 725 (7th Cir. 2012), and *Hayes Lemmerz International, Inc. v. American Insurance Company*, 619 F.3d 777 (7th Cir. 2010), do not alter our analysis as none of these cases dealt with the application of a workers compensation exclusion that purportedly barred coverage as that issue is presented here. Rather, these cases recognize only that, regardless of the merits of the underlying claim, an insurance company still has a duty to defend its insured against risks covered by the policy *unless* policy exclusions exist that, assuming the validity of the claim, nonetheless unambiguously bar coverage. As set forth above, we find that such an exclusion exists here.

ICW and High Performance agree that any asserted "bodily injury" claim against High Performance in the *Sullivan* Lawsuit concerns an employee subject to the remedy of the Indiana's Workers' Compensation Act. Accordingly, as a matter of law, even assuming the factual basis of the underlying litigation to be true, coverage is precluded by

13

16

the Policy's workers compensation exclusion and ICW has no duty to defend or indemnify High Performance in the *Sullivan* Lawsuit.

## IV.   Conclusion

For the reasons detailed above, we hold that Plaintiff does not owe a duty to defend or indemnify Defendant under Part II of the Workers Compensation and Employers Liability Policy for the gross negligence claim alleged against Defendant in the *Sullivan* Lawsuit. Accordingly, Plaintiff's Motion for Judgment on the Pleadings [Dkt. 31] is <u>GRANTED</u> and Defendant's Motion for Summary Judgment [33] on its counterclaim is <u>DENIED</u>. All other pending motions are <u>DENIED AS MOOT</u>. Final judgment shall issue accordingly.

IT IS SO ORDERED.

Date:   1/29/2025

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

14

17

Distribution:

Matthew James Anderson
TABOR LAW FIRM
manderson@maylorber.com

Trevor J. Crossen
CROSSEN LAW FIRM, LLC
trevor@crossenlawfirm.com

Mary E. McClellan
Quintairos, Prieto, Wood & Boyer
mary.mcclellan@qpwblaw.com

William Kilburn McVisk
Tressler LLP
wmcvisk@tresslerllp.com

Robert J. Palmer
MAY OBERFELL AND LORBER
rpalmer@maylorber.com

Colleen N Savage
Sgro and Roger
csavage@sgroandroger.com

Anthony Sgro
Sgro & Roger
tsgro@sgroandroger.com

Georgianne Marie Walker
MAY OBERFELL LORBER
gwalker@maylorber.com

18

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

/s/ Robert J. Palmer
Robert J. Palmer (6316-71)