No. 25-1327

---

IN THE UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT


HIGH PERFORMANCE ALLOYS, INC.,

Appellant

v.

INSURANCE COMPANY OF THE WEST

Appellee

---


Appeal from the United States District Court

For the Southern District of Indiana, Indianapolis Division

Honorable Judge Sarah Evans Barker, Judge Presiding


Case No. 23-cv-01875-SEB-MG

---

APPELLEE'S BRIEF

---

William K. McVisk
Tressler LLP
233 South Wacker Drive 61st Floor
Chicago, Illinois 60606
(312) 627-4000


*Counsel for Appellee INSURANCE COMPANY OF THE WEST*


ORAL ARGUMENT REQUESTED

# DISCLOSURE STATEMENT

1. The full name of the corporate party represented by counsel is Insurance Company of the West.

2. Insurance Company of the West is wholly owned by ICW Holdings, which is its sole shareholder and parent corporation. No publicly held companies own 10% or more of the party's stock.

3. Insurance Company of the West is represented in this matter by the law firm of Tressler LLP, through its attorney William K. McVisk.

4. Insurance Company of the West was represented in the district court by the law firm of Tressler LLP, through its attorney William K. McVisk.

Dated: November 14, 2025

By: */s/ William K. McVisk*
Attorney for Appellee, Insurance Company of the West

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT.................................................................................. 1

STATEMENT OF ISSUES ON APPEAL ....................................................................... 1

STATEMENT OF THE CASE........................................................................................ 1

I.      Introduction.......................................................................................................... 1

II.     The Policy ............................................................................................................ 2

III.    The *Sullivan* Lawsuit ......................................................................................... 3

IV.   District Court's Ruling......................................................................................... 4

SUMMARY OF THE ARGUMENT .............................................................................. 5

ARGUMENT................................................................................................................... 6

I.      Standard of Review.............................................................................................. 6

II.     The District Court Correctly Ruled that the Workers' Compensation Exclusion Bars
Coverage for the Entirety of the *Sullivan* Lawsuit.............................................. 6

       A.     HPA Waived Any Argument that the District Court Erred in Finding the
Workers' Compensation Exclusion Bars Coverage Regardless of Whether
Sullivan Is Pursuing a Remedy Under a Workers Compensation Scheme. ............ 6

       B.     The District Court Correctly Found that the Gross Negligence Claim Alleged
in the *Sullivan* Lawsuit Falls Under the Exclusive Jurisdiction of Indiana
Worker's Compensation Act. ................................................................................ 7

       C.     The District Court Correctly Concluded that the Workers' Compensation
Exclusion Bars Coverage for the *Sullivan* Lawsuit. ........................................... 10

III.    To the Extent that the *Sullivan* Lawsuit Alleges Facts Outside the Exclusive
Jurisdiction of the Indiana Worker's Compensation Act, There Is No Coverage
Because the Bodily Injury Was Not Caused by an Accident and the Intentional Acts
Exclusion Unambiguously Bars Coverage ........................................................11

       A.     The District Court Correctly Found that To the Extent that Allegations in the
*Sullivan* Lawsuit Could be Read to Allege an Intentional Tort, the Policy's
Intentional Acts Exclusion Would Preclude Coverage for Any Such Claim. ........11

       B.     The Employers Liability Section of the Policy Applies to Bodily Injury by
Accident; to the Extent the *Sullivan* Lawsuit Alleges an Intentional Tort, such
Claims Fall Outside the Scope of Coverage Afforded by the Employers
Liability Section of the Policy................................................................................ 13

C. The Court Need Not Look to Other Jurisdictions to Determine the Applicability of the Intentional Acts Exclusion, But to the Extent that the Court Does Consider Other Jurisdictions' Jurisprudence, Such Jurisprudence Supports a Conclusion that the Intentional Acts Exclusion Bars Coverage to the Extent that Sullivan's Claims Are Not Subject to the Worker's Compensation Exclusive Remedy.......................................................................... 14

D. Certification of HPA's State Law Question is Improper and Unnecessary. .......... 17

IV. Because There Is No Potential for Coverage Under the Policy, ICW Does Not Have a Duty to Defend HPA in the Sullivan Lawsuit. ................................................................. 21

V. Because the Sullivan Lawsuit Has Not Yet Been Resolved, If This Court Finds a Duty to Defend, It Must Also Find that ICW's Duty to Indemnify Cannot Be Determined Until Resolution of the Sullivan Lawsuit.......................................................................... 22

VI. Finding ICW has a Duty to Defend HPA with Respect to the *Sullivan* Lawsuit Disregards the Purpose of the Two-Part Workers Compensation and Employer Liability Coverage Provided by the Policy. ....................................................................... 23

**CONCLUSION** ........................................................................................................................ **23**

# TABLE OF AUTHORITIES

**Cases**

*Agee v. C. Soya Co.*,
695 N.E.2d 624 (Ind. Ct. App. 1998)...................................................................... 8, 10

*American Bankers Ins. Co. of Florida v. Shockley*,
3 F.4th 322 (7th Cir. 2021)............................................................................................. 22

*Auto-Owners Ins. Co. v. Harvey*,
842 N.E.2d 1279 (Ind. 2006) ........................................................................................ 13

*Baker v. Westinghouse Elec. Corp.*,
637 N.E.2d 1271 (Ind. 1994) .......................................... 7, 8, 9, 12, 13, 14, 15, 19

*Blade v. Anaconda Aluminum Co.*,
452 N.E.2d 1036 (Ind. Ct. App. 1983).................................................................... 8, 10

*Brownsburg Area Patrons Affecting Change v. Baldwin*,
137 F.3d 503 (7th Cir.1998)........................................................................................... 18

*Cavalier Manufacturing Company v. Employers Insurance of Wausau,*
564 N.W.2d. 68 (Mich. Ct. App. 1997)....................................................................... 16

*Cincinnati Ins. Co. v. Mallon*,
409 N.E.2d 1100 (Ind. App. 1980)............................................................................... 21

*City of Gary v. Auto-Owners Ins. Co.*,
116 N.E.3d 1116 (Ind. Ct. App. 2018) ...................................................................... 22

*Culligan v. State Compensation Ins. Fund*,
81 Cal.App.4th 429 (2000) ............................................................................................... 7

*DeGrand v. Motors Ins. Corp.*,
903 F.2d 1100 (7th Cir.1990) ....................................................................................... 18

*Doe v. Am. Nat'l Red Cross*,
976 F.2d 372 (7th Cir.1992)........................................................................................... 18

*Ebert v. Illinois Cas. Co.*,
188 N.E.3d 858 (Ind. 2022) .......................................................................................... 22

*Fed Ins. Co. v. Stroh Brewing Co.*,
127 F.3d 563 (7th Cir. 1997).......................................................................................... 21

*Hayes Lemmerz Int'l, Inc. v. Ace Am. Ins. Co.*,
619 F.3d 777 (7th Cir. 2010)..........................................................................................11

*In re Badger Lines, Inc.*,
140 F.3d 691 (7th Cir.1998) .................................................................................... 18

*Indiana Farmers Mut. Ins. Co. v. N. Vernon Drop Forge, Inc.*,
917 N.E.2d 1258 (Ind. Ct. App. 2009) ........................................................... 10, 12, 14

*Indiana Ins. Co. v. Kopetsky*,
11 N.E.3d 508 (Ind. Ct. App. 2014) ........................................................................ 22

*Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*,
732 F.3d 755 (7th Cir. 2013) ................................................................................... 20

*Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*,
108 F.4th 458(7th Cir. 2024), *reh'g and reh'g in banc dismissed*, No. 22-2370, 2024 WL
4416886 (7th Cir. Oct. 4, 2024), and *cert. denied*, 145 S. Ct. 1182, 221 L. Ed. 2d 257 (2025). 6

*New Jersey Manufactures Insurance Company v. Delta Plastics Corp.*,
883 A.2d 399 (N.J. Ct. App.2005) ........................................................................... 16

*Owens v. DSM Eng'g Plastics, Inc.*,
641 N.E.2d 1271 (Ind. Ct. App. 1994) ................................................................... 8, 10

*Royal Indem. Co. v. Soneco/Ne., Inc.*,
183 F. Supp. 2d 526 (D. Conn. 2002) ...................................................................... 16

*Sinn v. Lemmon*,
911 F.3d 412 (7th Cir. 2018) ..................................................................................... 6

*State Farm Mut. Auto. Ins. Co. v. Pate*,
275 F.3d 666 (7th Cir. 2001) ............................................................................. 17, 20

*Terre Haute First Nat'l Bank v. Pac. Employers Ins. Co.*,
634 N.E.2d 1336 (Ind. Ct. App. 1993) ................................................................. 12, 14

*Tidler v. Eli Lilly & Co.*,
851 F.2d 418 (D.C.Cir.1988) ................................................................................... 17

*Todd v. Societe BIC*,
9 F.3d 1216 (7th Cir.1993) ...................................................................................... 18

*Travelers Indem. Co. v. PCR Inc.*,
889 So. 2d 779 (Fla. 2004) ...................................................................................... 17

*Turubchuk v. S. Illinois Asphalt Co., Inc.*,
958 F.3d 541 .............................................................................................................. 6

*Virk Boyz Liquor Stores*, LLC,
219 F. Supp. 3d 868 at 873 ..................................................................................... 21

*Woodbridge Place Apartments v. Washington Square Capital*,
965 F.2d 1429 (7th Cir.1992).................................................................................. 18

**Other Authorities**

Indiana Worker's Compensation Act ................................................ 2, 5, 6, 7, 8, 15, 16, 17, 20, 21

Indiana Worker's Compensation Act,
Ind. Code Ann. § 22-3-2-6 (West) ...........................................................................8, 10, 11, 12

**Rules**

Rule 64 of the Indiana Rules of Appellate Procedure.................................................... 20

## JURISDICTIONAL STATEMENT

Appellant's jurisdictional statement is complete and correct.

## STATEMENT OF ISSUES ON APPEAL

The issue on appeal is whether the employers liability portion of a Workers Compensation and Employers Liability Insurance Policy owes a duty to defend or indemnify a direct underlying lawsuit from an employee or heir against his or her employer when the workers' compensation portion of the same policy is already providing the required benefits to the underlying plaintiffs. The district court ruled that coverage for an underlying personal injury lawsuit, brought by a representative of an employee against his employer, which potentially includes allegations of both negligent and intentional conduct, is barred by application of two policy exclusions, one of which bars coverage for any obligation imposed by a workers compensation law and one of which bars coverage for bodily injury intentionally caused or aggravated by the insured.

## STATEMENT OF THE CASE

### I.   Introduction

This appeal arises from an insurance coverage dispute in which Insurance Company of the West ("ICW") was granted judgment by the trial court that it has no duty to defend or indemnify Defendant, High Performance Alloys, Inc. ("HPA"), in connection with claims asserted against it in the underlying suit, *Sullivan v. High Performance Alloys, Inc.*, pending in the Circuit Court of Tipton County, Indiana (the "*Sullivan* Lawsuit") under a Workers Compensation and Employers' Liability Insurance Policy issued by ICW to HPA (the "Policy").

The *Sullivan* Lawsuit arises from the death of one of HPA's employees, Elliot Sullivan, while working for HPA, and seeks to hold HPA liable for that death. Under Indiana law, there are only two ways for the underlying plaintiff to recover anything from HPA. The plaintiff can either recover under the Indiana Workers' Compensation Act, or it can recover by establishing that the

1

employer acted with intent to injure the decedent. Either way, there is no coverage under the Employers' Liability coverage of the ICW Policy because the Policy excludes coverage for workers' compensation liability and also excludes coverage for injuries intentionally caused by the employer. Since there is no way for any damages to be awarded in the *Sullivan* Lawsuit that would be covered by the Policy, ICW has no duty to defend the *Sullivan* Lawsuit.

The *Sullivan* Lawsuit alleges that Elliot Sullivan was employed as a plant manager for HPA when he sustained personal injuries while working at a HPA facility, resulting in his death. The *Sullivan* Lawsuit labels the count against HPA a gross negligence, but the count includes allegations of both negligent and intentional acts against HPA. While there are two ways that the allegations against HPA in the *Sullivan* Lawsuit can be read, neither would result in any liability under the Policy. As there are no material facts genuinely in dispute, the court below was correct when it entered judgment on the pleadings in favor of ICW.

## II. The Policy

ICW issued a Workers Compensation and Employers' Liability Insurance Policy to HPA with an effective period of October 1, 2021 to October 1, 2022. Dkt. #1-5; Dkt. #12 ⁋ 15. The Policy provides Workers Compensation Insurance and Employers Liability Insurance coverage parts. Dkt. #1-5; Dkt. #12 ⁋ 16. Subject to certain terms, definitions and exclusions, Part Two of the Policy applies to bodily injury caused by an accident, including bodily injury resulting in death. Dkt. #1-5; ; Dkt. #12 ⁋ 18.

Section A of Part Two of the Policy provides:

### A. How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease….

Dkt. #1-5.

Section B of the Part Two of the Policy provides:

**B.**     **We Will Pay**

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance. . . .

Dkt. #1-5.

Section C of the Part Two of the Policy sets forth the following exclusions:

**C.**     **Exclusions**

This insurance does not cover:
\*\*\*
4.   Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5.   Bodily injury intentionally caused or aggravated by you;

\*\*\*
11. Fines or penalties imposed for violation of federal or state law; . . .

Dkt. #1-5.

**III.     The *Sullivan* Lawsuit**

The underlying plaintiff, Sara Sullivan, as Wife and Representative of the Estate of Elliot Sullivan ("Sullivan"), filed the *Sullivan* Lawsuit against HPA and others. Dkt. #1-4. The *Sullivan* Lawsuit alleges that Elliot Sullivan was employed as a plant manager for HPA at the HPA facility located in Tipton County, Indiana. Dkt. #1-4, ¶¶ 2, 6. It further alleges that on August 12, 2022, configuration tests were run on a 750-Ton Large Erie Forge Press inside the HPA facility. Dkt. #1-4, ¶ 7. The Erie Forge Press had metal bars, referred to as "shims" or "hard-stops", on each corner of the bolster plate of the Erie Forge Press, which were used to configure the machine. Dkt. #1-4, ¶¶ 8-9.

The *Sullivan* Lawsuit alleges that on August 12, 2022, when the Erie Forge Press head was lowered and pressure was applied, the southwest corner shim or hard-stop shot out underneath the

bolster plate at a high rate of speed toward the control panel and struck Elliot Sullivan in the abdomen. Dkt. #1-4, ¶¶ 10, 13. As a result, Elliot Sullivan allegedly sustained fatal injuries. Dkt. #1-4, ¶ 80.

The *Sullivan* Lawsuit alleges that HPA had actual knowledge that its employees were in danger of being struck by and caught in hazards due to HPA's failure to properly safeguard its employees from machinery using protective shields because it had received a "serious" violation from the Indiana Occupational Safety and Health Administration for having "ineffectively guarded" equipment. Dkt. #1-4, ¶¶ 74-75. The *Sullivan* Lawsuit further alleges that "HPA had actual knowledge of a Lake Erie software or system update that allowed the … Press operators the ability of precision during the calibration and measuring process without the need for shims or hard stops", but HPA failed to install the update and continued to force employees to use the hard stops or shims. Dkt. #1-4, ¶¶ 77-78. It is alleged that HPA acted with actual intent to cause injury to Elliot Sullivan. Dkt. #1-4, ¶ 79. Elliot Sullivan allegedly lost his life as a direct and proximate result of the grossly negligent and careless acts and omissions of HPA. Dkt. #1-4, ¶ 80.

## IV.     District Court's Ruling

ICW filed a motion for judgment on the pleadings seeking a declaration that ICW does not have a duty to defend against the *Sullivan* Complaint because the underlying factual basis of the *Sullivan* Complaint, even if proved true, would not result in coverage under the Policy. Dkt. # 32. HPA filed a motion for summary judgment, seeking a defense and indemnity from ICW on the basis that the allegations of the *Sullivan* Complaint fall within the coverage provided by the Policy, however meritless the claims might be. Dkt. # 34.

The district court granted ICW's motion for judgment on the pleadings and denied HPA's motion for summary judgment on January 29, 2025, holding that ICW has no duty to defend or indemnify HPA in the *Sullivan* Lawsuit. Dkt. # 55. Specifically, the district court determined that

the Policy's exclusion for "[a]ny obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;" (the "Workers' Compensation Exclusion") unambiguously barred coverage for the sole claim brought against HPA in the *Sullivan* Lawsuit, thus relieving ICW of the duty to defend. Dkt. # 54, pg. 10. The district court further noted that "[t]o the extent the allegations in the *Sullivan* Lawsuit could be read to allege an intentional tort not governed by worker's compensation exclusivity, the Policy's intentional harm exclusion would preclude coverage for any such claim." Dkt. # 54, pg. 9.

## SUMMARY OF THE ARGUMENT

ICW has no duty to defend HPA against the *Sullivan* Complaint because the underlying factual basis of the *Sullivan* Lawsuit, even if proved true, would not result in coverage under the Policy. The *Sullivan* Lawsuit brings a claim against HPA for "gross negligence." Although labeled as a claim for gross negligence, the *Sullivan* Lawsuit includes factual allegations of both negligent and intentional acts by HPA. There are two ways in which the allegations against HPA in the *Sullivan* Lawsuit can be read, neither of which results in any coverage under the Policy. Specifically, if the *Sullivan* Lawsuit is read as alleging negligence against HPA, the claims would fall under the Indiana Worker's Compensation Act, which is the exclusive remedy for employment-related personal injury or death that occurs "by accident" (i.e. when neither the sufferer nor employer intends it to result). The Policy precludes coverage for "[a]ny obligation imposed by a workers compensation … law," so there would be no coverage for this matter under the Policy for HPA's alleged negligence. On the other hand, if the *Sullivan* Lawsuit is read as alleging an intentional tort against HPA, there is no coverage under the Policy because coverage for "[b]odily injury intentionally caused or aggravated by [HPA]" is precluded.

5

Therefore, this Court should affirm the district court and hold that ICW has no duty to defend or indemnify HPA in connection with the *Sullivan* Lawsuit.

## ARGUMENT

### I. Standard of Review

This Court reviews a trial court's summary judgment and judgment on the pleadings ruling *de novo*, interpreting the facts, and drawing all reasonable inferences in favor of the nonmoving party. *Turubchuk v. S. Illinois Asphalt Co., Inc.,* 958 F.3d 541, 548 (7th Cir. 2020); *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018).

### II. The District Court Correctly Ruled that the Workers' Compensation Exclusion Bars Coverage for the Entirety of the *Sullivan* Lawsuit.

A.  HPA Waived Any Argument that the District Court Erred in Finding the Workers' Compensation Exclusion Bars Coverage Regardless of Whether Sullivan Is Pursuing a Remedy Under a Workers Compensation Scheme.

Under well-established Seventh Circuit precedent, "[a]n issue that falls within the scope of the judgment appealed from that is not raised by the appellant in its opening brief on appeal is necessarily waived." *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, 108 F.4th 458, 492 (7th Cir. 2024), *reh'g and reh'g in banc dismissed*, No. 22-2370, 2024 WL 4416886 (7th Cir. Oct. 4, 2024), and *cert. denied*, 145 S. Ct. 1182, 221 L. Ed. 2d 257 (2025). In its opening brief, HPA has not contested that, to the extent Sullivan's injuries are only compensable through the Indiana Worker's Compensation Act, the Policy's Workers' Compensation Exclusion bars coverage for such claims. Thus, HPA has waived its right to contest the district court's finding that the Workers' Compensation Exclusion only bars coverage for claims compensable under the Indiana Worker's Compensation Act, regardless of whether the injured employee is pursuing a remedy under a workers compensation scheme.

Even if the issue was not waived by HPA, the district court correctly found that the Policy's Workers' Compensation Exclusion unambiguously bars coverage for the sole claim brought against HPA in the *Sullivan* Lawsuit. Dkt. # 54, pg. 10. In so holding, the district court noted that, "so long as the underlying lawsuit concerns an employee subject to the remedy of workers compensation laws, courts have interpreted workers compensation exclusions similar to the exclusion at bar to exclude the employees' claims from coverage, regardless of whether they were pursuing a remedy under a workers compensation scheme." *Id.* at 11. Here, the fact that Sullivan is not seeking workers' compensation benefits in the *Sullivan* Lawsuit does not change the fact that Sullivan's claims are governed by the Indiana Workers' Compensation Act so that any relief due to Sullivan is an "obligation imposed" by the Indiana Workers' Compensation Act. As noted by the district court, if "an employee required by the exclusivity rule to use only workers' compensation could simply choose not to use it and consequently create a duty to defend" on the part of the employer's insurer, the cost limits of the compensation bargain and structural distinction of the Policy would be lost, "all at the whim of the employee." *Id.* at 13 (citing *Culligan v. State Compensation Ins. Fund*, 81 Cal.App.4th 429, 439 (2000)). Thus, to the extent that Sullivan's claims are subject to the remedy of workers' compensation laws, the Workers' Compensation Exclusion unambiguously bars coverage for such claims.

B.    The District Court Correctly Found that the Gross Negligence Claim Alleged in the *Sullivan* Lawsuit Falls Under the Exclusive Jurisdiction of Indiana Worker's Compensation Act.

Under Indiana law, the Indiana Worker's Compensation Act is the exclusive remedy for employment-related personal injury or death that occurs "by accident." *Baker v. Westinghouse Elec. Corp.*, 637 N.E.2d 1271, 1273 (Ind. 1994). The Indiana Worker's Compensation Act, Ind. Code Ann. § 22-3-2-6 (West), provides that "[t]he rights and remedies granted to an employee subject to IC 22-3-2 through IC 22-3-6 on account of personal injury or death by accident shall

exclude all other rights and remedies of such employee, the employee's personal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury or death, except for remedies available under IC 5-2-6.1." "[A]n injury occurs 'by accident' only when neither the sufferer nor the employer intends it to result." *Id*. at 1274. Further, "nothing short of deliberate intent to inflict an injury, or actual knowledge that an injury is certain to occur, will suffice." *Id.* at 1275. Mere employer negligence or recklessness is not sufficient. *Id.* Thus, under Indiana law, for an employee to recover compensation from the employer for workplace injuries, the employee either has to recover under the Workers' Compensation Act, or the employee has to establish that the injuries resulted from conduct intended to cause injury. In either case, there is no coverage under the Policy.

Indiana appellate decisions, decided both before and after *Westinghouse*, make clear that gross negligence, recklessness, and acts "substantially certain" to cause injury are insufficient to state a tort claim based on a workplace injury in light of the Worker's Compensation Act's exclusive remedy provision. *Owens v. DSM Eng'g Plastics, Inc.*, 641 N.E.2d 1271, 1274 (Ind. Ct. App. 1994) (holding that even though the employer knew the procedure which caused the plaintiff's injuries was dangerous, plaintiff failed to show that the employer specifically intended the plaintiff's resulting injuries); *Blade v. Anaconda Aluminum Co.*, 452 N.E.2d 1036, 1038 (Ind. Ct. App. 1983) ("Although we may infer from [plaintiff]'s complaint that [defendant] intentionally pursued a course of conduct which jeopardized its worker's safety, no facts were alleged which support an inference that [defendant] intentionally injured [the plaintiff]."); *Agee v. C. Soya Co.*, 695 N.E.2d 624, 628 (Ind. Ct. App. 1998) (holding that although the IOSHA cited the employer for failure to keep its workplace free of hazards, and the employer willingly permitted hazardous

work conditions to exist, "such evidence simply does not establish the elements that are necessary" to except the claim from the exclusivity provision of the Worker's Compensation Act).

The *Sullivan* Lawsuit contains the following allegations:

74. That, upon information and belief, Defendant HPA acted with gross negligence and in a willful and wanton manner, without regard to the safety of others.

75. That prior to Elliot's death, HPA received a 'serious violation from the Indiana Occupational and Safety Health Administration for having 'ineffectively guarded' equipment which exposed employees to potentially be 'struck-by-and caught-in hazards.'

76. That Defendant HPA had actual knowledge that its employees were in danger of being struck-by and caught-in hazards due to Defendant HPA's failure to properly safeguard the employees from the machinery using protective shields.

77. That, upon information and belief, Defendant HPA knew or should have known that the Erie Forge Press was dangerous and failed to correct its dangerous condition.

78. That, upon information and belief, Defendant HPA had actual knowledge of a Lake Erie software and/or system update that allowed 750 Ton Press operators the ability of precision during the calibration and measuring process without the need for shims or hard-stops.

79. That, upon information and belief, despite this actual knowledge, Defendant HPA failed to install this update and continued to force employees to use the hard-stops and/or shims knowingly placing employees in danger while the machine was in operation.

80. That based on this conduct, Defendant HPA acted with actual intent to cause injury to Elliot.

81. That, as a direct and proximate of the grossly negligent, and careless acts and omissions of HPA Elliot lost his life, entitling Plaintiffs to recover damages.

(Dkt. # 35-1 at 12-13).

Under the precedent set forth under *Westinghouse* and other Indiana decisions, none of the *factual* allegations set forth in the *Sullivan* Complaint exist outside the scope of the exclusive jurisdiction of the Indiana Worker's Compensation Act. Under Indiana law, the factual allegations, not the "legal labels" or legal theories, determine an insurer's duty to defend. *Indiana Farmers*

*Mut. Ins. Co. v. N. Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1271 (Ind. Ct. App. 2009). The allegations contained in paragraphs 74 – 79 and 81 of the *Sullivan* Complaint are insufficient to state a tort claim based on a workplace injury in light of the Worker's Compensation Act's exclusive remedy provision. In fact, Indiana courts have held that similar allegations are not sufficient to get around the exclusivity provision because such allegations do not allege conduct that is not an "accident." *See Owens v. DSM Eng'g Plastics, Inc.*, 641 N.E.2d 1271, 1274 (Ind. Ct. App. 1994); *Blade v. Anaconda Aluminum Co.*, 452 N.E.2d 1036, 1038 (Ind. Ct. App. 1983); *Agee v. C. Soya Co.*, 695 N.E.2d 624, 628 (Ind. Ct. App. 1998).

    C.    <u>The District Court Correctly Concluded that the Workers' Compensation Exclusion Bars Coverage for the *Sullivan* Lawsuit.</u>

The district court was correct in its ruling that, as a matter of law, even assuming the factual basis of the underlying litigation to be true, coverage is precluded by the Policy's Workers' Compensation Exclusion and ICW has no duty to defend or indemnify HPA in the *Sullivan* Lawsuit. Dkt. # 54 at 13-14.

The Policy issued by ICW to HPA includes two parts: one part provides coverage specifically for workers' compensation,[1] and the second part provides coverage for claims against an employer for a workers' injuries that fall outside the workers' compensation exclusive remedy provision, such as third-party claims by co-defendants against the employer. The Workers' Compensation Exclusion in the employers' liability part of the Policy precludes coverage for "[a]ny obligation imposed by a workers' compensation…law." In reaching its decision, the district court noted that other courts have found that as long as the underlying lawsuit concerns an employee subject to the remedy of workers' compensation laws, workers' compensation exclusions

---

[1] ICW is providing coverage under the workers' compensation part of the Policy for a separate workers' compensation claim brought by the underlying plaintiff.

similar to the exclusion here exclude the employees' claims from coverage, regardless of whether they were pursuing a remedy under a workers' compensation scheme. *Id.* at 11. The district court also noted that this interpretation best aligns with the purpose of the two-part workers compensation and employer liability coverage provided by the Policy, which this Court recognized in *Hayes Lemmerz Int'l, Inc. v. Ace Am. Ins. Co.*, 619 F.3d 777, 778-79 (7th Cir. 2010). As explained above, any claim asserted against HPA in the *Sullivan* Lawsuit is subject to the exclusive remedy provision of the Indiana Worker's Compensation Act. Because the Workers' Compensation Exclusion unambiguously bars coverage for negligence claims which fall within the scope of workers' compensation laws, the district court correctly found that ICW has no duty to defend or indemnify HPA in connection with the *Sullivan* Lawsuit.

**III.** **To the Extent that the *Sullivan* Lawsuit Alleges Facts Outside the Exclusive Jurisdiction of the Indiana Worker's Compensation Act, There Is No Coverage Because the Bodily Injury Was Not Caused by an Accident and the Intentional Acts Exclusion Unambiguously Bars Coverage**

    A. <u>The District Court Correctly Found that To the Extent that Allegations in the *Sullivan* Lawsuit Could be Read to Allege an Intentional Tort, the Policy's Intentional Acts Exclusion Would Preclude Coverage for Any Such Claim.</u>

In addition to the Workers' Compensation Exclusion, the Policy also excludes coverage for any bodily injury "intentionally caused or aggravated by [HPA]." The *Sullivan* Lawsuit alleges that "HPA acted with actual intent to cause injury to Elliot." (Dkt. # 35-1 at 12-13). Thus, to the extent that the *Sullivan* Lawsuit alleges facts outside the scope of the Indiana Workers' Compensation Act, it alleges bodily injury "intentionally caused" by HPA, so the Intentional Acts Exclusion of the Policy precludes coverage.

The district court reasoned, "[t]o the extent the allegations in the Sullivan lawsuit could be read to allege an intentional tort not governed by worker's compensation exclusivity, the policy's intentional harm exclusion would preclude coverage for any such claim. The case therefore turns

on the applicability of the worker's compensation exclusion and we do not discuss the intentional harm exclusion further." Dkt. # 54, at 12.

In its opening brief, HPA takes issue with the fact that the district court resolved this issue in a footnote, "without any analysis of Indiana law" and states that the court's "assumption that simply labeling an employer's actions as an intentional tort excludes those acts from coverage is clearly erroneous." HPA Brief at pg. 18. Contrary to HPA's assertions, the district court correctly applied Indiana law to correctly determine that to the extent the allegations in the *Sullivan* Lawsuit could be read to allege an intentional tort, the Policy's Intentional Harm Exclusion applies to bar coverage for any such claim.

The Indiana Supreme Court held that "the [Worker's Compensation Act] itself does not include employers' intentional torts within its coverage." *Baker*, 637 N.E.2d at 1273. To bring an intentional tort outside of the Worker's Compensation Act, a plaintiff must show (1) "deliberate intent to inflict an injury, or actual knowledge that an injury is certain to occur," and (2) "the employer itself must have intended the injury." *Id*. at 1275. Since an injury or death cannot occur "by accident" if it is intended by an employee or employer, the intentional torts of an employer are beyond the scope of the Act. *Id*. at 1273. Indiana courts have held that for purposes of liability insurance, an accident is "an unexpected happening without an intention or design." *Indiana Farmers Mut. Ins. Co. v. North Vernon Drop Forge, Inc.*, 917 N.E.2d 1268, 1267 (Ind. Ct. App. 2009); *Terre Haute First Nat'l Bank v. Pac. Employers Ins. Co.*, 634 N.E.2d 1336, 1338 (Ind. Ct. App. 1993).

For purposes of intentional acts exclusions, Indiana courts consider whether the resulting injury is intentional and whether "reason mandates that from the very nature of the act, harm to the injured party must have been intended." *Id.*

The Policy excludes coverage for "[b]odily injury intentionally caused or aggravated by [HPA]" (the "Intentional Acts Exclusion"). Under Indiana law, for Sullivan to bring a claim outside of the Worker's Compensation Act, Sullivan must allege facts demonstrating that HPA deliberately intended to inflict injury or had actual knowledge that an injury is certain to occur and that HPA must have intended the injury. The only way Sullivan can recover for injuries that occurred in the course of Elliot's employment outside the scope of the Worker's Compensation Act is if the injuries were intentional, such that they did not occur by accident. As the court held in *Baker*, if an action is intended by the employer, it is not an accident and falls outside the scope of the Act. If the *Sullivan* Lawsuit falls outside the scope of the act, HPA must have deliberately intended to inflict injury or intended the injury to occur, such that coverage is precluded under the Intentional Acts Exclusion of the Policy.

The Indiana Supreme Court held an inference of harm can be made for purposes of intentional acts exclusions "where reason *mandates* that from the very nature of the act, harm to the injured party *must* have been intended." *Auto-Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1290 (Ind. 2006) (internal quotations and citations omitted; emphasis in original).

Sullivan's claims cannot survive outside of the purview of the Worker's Compensation Act unless HPA acted with the intent to harm Elliot, in which case coverage is precluded under the Intentional Acts Exclusion. Thus, the district court correctly concluded that, to the extent that the Policy's Worker's Compensation exclusion did not apply the Policy's Intentional Acts Exclusion precludes coverage for the *Sullivan* Lawsuit.

      B.     <u>The Employers Liability Section of the Policy Applies to Bodily Injury by Accident; to the Extent the *Sullivan* Lawsuit Alleges an Intentional Tort, such Claims Fall Outside the Scope of Coverage Afforded by the Employers Liability Section of the Policy.</u>

Section A of the employers liability section of the Policy provides that coverage applies to bodily injury caused by an accident. Indiana law is clear that, for purposes of liability insurance, an accident is "an unexpected happening without an intention or design." *Indiana Farmers Mut. Ins. Co.*, 917 N.E.2d at 1267; *Terre Haute First Nat'l Bank*, 634 N.E.2d at 1338. The Indiana Worker's Compensation Act is the exclusive remedy for employment-related personal injury or death which occurs "by accident"; injuries from intentional torts of an employer are not "by accident," and are necessarily beyond Act's scope. *Baker*, 637 N.E.2d at 1273. Similarly, to the extent that the Sullivan Lawsuit alleges intentional acts that fall outside the scope of the Worker's Compensation Acts, such acts are not "accidents" and therefore fall outside the scope of the employers' liability section of the Policy. Thus, to the extent that the *Sullivan* Lawsuit alleges intentional conduct by HPA, Sullivan's injuries were not caused by an accident. Because the Policy only provides coverage for bodily injury caused by an accident, to the extent that *Sullivan* Lawsuit alleges an intentional tort not subject to the exclusive remedy of the Indiana Worker's Compensation Act, there is no coverage for the Sullivan Lawsuit.

C. The Court Need Not Look to Other Jurisdictions to Determine the Applicability of the Intentional Acts Exclusion, But to the Extent that the Court Does Consider Other Jurisdictions' Jurisprudence, Such Jurisprudence Supports a Conclusion that the Intentional Acts Exclusion Bars Coverage to the Extent that Sullivan's Claims Are Not Subject to the Worker's Compensation Exclusive Remedy.

HPA contends that because Indiana appellate courts have not specifically addressed "coverage issues arising from the two types of intent which remove a claim from workers compensation jurisdiction", this Court must look to guidance from other jurisdictions to determine the applicability of the Intentional Harm Exclusion to the present case. HPA Brief, pg. 18. As discussed above, although Indiana courts have not specifically considered this precise issue, the application of Indiana jurisprudence regarding intentional acts exclusions to this case demonstrates that the Intentional Acts Exclusion bars coverage for any of Sullivan's claims which may exist

14

outside the jurisdiction of the Indiana Worker's Compensation Act. Moreover, the cases relied upon by HPA are distinguishable from the present case.

In *Baker v. Westinghouse Electric Corp*., 637 N.E.2d 1271, 1272 (Ind. 1994), the Indiana Supreme Court held that certain intentional tort actions are not barred by the Indiana Worker's Compensation Act. "Nothing short of deliberate intent to inflict an injury, or actual knowledge that an injury is certain to occur, would exclude an act or omission from the exclusive remedy of the Worker's Compensation Act." 637 N.E.2d at 1275. As the Court explained in *Baker*, the exclusivity provision of the Workers' Compensation Act is limited to injury arising out of the course of employment which occurs "by accident", and an injury occurs "by accident" "only when it is intended by neither the employee nor the employer." *Id.* at 1273. Here, the Employers' Liability portion of the Policy excludes coverage for injuries caused that not caused by an accident because they were intended by HPA.

As HPA notes in its own brief, courts from other jurisdictions have plainly ruled that there is no coverage for an employer's intent to injure an employee. HPA Brief, pg. 18. This is the exact situation before the Court. The only allegation, that HPA engaged in conduct that is not compensable solely through the Indiana Worker's Compensation Act is that "based on [the foregoing conduct by HPA], Defendant HPA acted with *actual intent* to cause injury to Elliot." Dkt. # 35-1, at 12-13 (emphasis added).

Every other allegation against HPA in the *Sullivan* Complaint alleges negligent, reckless, or wanton conduct that is not sufficient to exclude an act or omission from the exclusive remedy of the Worker's Compensation Act. *See id.* at 1275. Thus, even if other jurisdictions have found that intentional acts exclusions do not apply to bar coverage when an employer has actual knowledge that an injury is certain to occur, the *Sullivan* Complaint does not allege that HPA had

actual knowledge that an injury was certain to occur – it alleges that HPA acted with *actual intent* to cause injury. Thus, the foreign cases relied upon by HPA have no bearing in this case.

In *Cavalier Manufacturing Company v. Employers Insurance of Wausau,* 564 N.W.2d. 68, 71 (Mich. Ct. App. 1997), while the Michigan appellate court found that the intentional acts exclusion did not apply to bar coverage, the court expressly noted that "[t]he employee has alleged no actual intent to injure on the part of [the employer] or on the part of any of its agents. Therefore, the employee has not alleged 'bodily injury intentionally caused,' and the exclusion is inapplicable." Here, by contrast, paragraph 80 of the *Sullivan* Complaint alleges that "based on [the foregoing conduct], Defendant HPA acted with actual intent to cause injury to Elliot." Dkt. # 35-1, at 12-13. Thus, to the extent that the claim is not subject to the exclusive jurisdiction of the Indiana Worker's Compensation, under the standard set forth in *Cavalier*, the Intentional Acts Exclusion applies to bar coverage. Contrary to what HPA asserts, *Cavalier* actually supports the conclusion that ICW owes no duty to defend or indemnify due to the application of the Intentional Acts Exclusion.

Similarly, in *New Jersey Manufactures Insurance Company v. Delta Plastics Corp*., 883 A.2d 399, 404 – 405 (N.J. Ct. App.2005), the court held that the intentional acts exclusion did not bar coverage when the injured employee's complaint alleges "conduct that was 'substantially certain' to cause injury, and therefore on its face is not, subjectively an 'injury intentionally caused.'" The same goes for *Royal Indem. Co. v. Soneco/Ne., Inc.*, 183 F. Supp. 2d 526 (D. Conn. 2002), where the court found that the injured employees did not allege that the employer intentionally injured them or intentionally aggravated their injuries, as well as *Travelers Indem. Co. v. PCR Inc.,* 889 So. 2d 779, 794 (Fla. 2004), where the court noted that the intentional tort exclusion excludes conduct when the insured specifically intends to caused injury. Here, however,

the *Sullivan* Complaint plainly alleges that HPA "acted with actual intent to cause injury to Elliot." Dkt. # 35-1, at 12-13. Thus, on the face of the *Sullivan* Complaint, the plaintiff has alleged an "injury intentionally caused" by HPA such that the Intentional Acts Exclusion applies to bar coverage.

       D.      <u>Certification of HPA's State Law Question is Improper and Unnecessary.</u>

HPA's opening brief also includes a Motion to Certify Question of State Law. Specifically, HPA requests that this Court should certify "the question of whether the [Intentional Acts Exclusion] of an employer's insurance policy applies to an employer's intentional tort which meets only substantive-certainty test of intentional torts excluded from the Indiana Workers Compensation Act." HPA Brief, pg. 10. The certification of this question to the Indiana Supreme Court is both improper and unnecessary as there is no unresolved question of state law that is vital to the correct disposition of this case.

Federal courts consider several factors when deciding whether to certify a question to a state supreme court. *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 671 (7th Cir. 2001). "The most important consideration guiding the exercise of this discretion ... is whether the reviewing court finds itself genuinely uncertain about a question of state law that is vital to a correct disposition of the case." *Id.* (citing *Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 426 (D.C.Cir.1988)). The Seventh Circuit has previously stated that "certification is appropriate when the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue." *In re Badger Lines, Inc.*, 140 F.3d 691, 698–99 (7th Cir.1998); *see also Doe v. Am. Nat'l Red Cross*, 976 F.2d 372, 374–75 (7th Cir.1992). "Certification to a state supreme court is more likely when the result of the decision will almost exclusively impact citizens of that state, *see Brownsburg Area*

17

*Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 509 (7th Cir.1998), or when there is a conflict between intermediate courts of appeal*, see Todd v. Societe BIC*, 9 F.3d 1216, 1221–22 (7th Cir.1993) (en banc); *DeGrand v. Motors Ins. Corp.*, 903 F.2d 1100, 1104 (7th Cir.1990), or if it is an issue of first impression, *see Woodbridge Place Apartments v. Washington Square Capital*, 965 F.2d 1429, 1434 (7th Cir.1992)." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001).

The Indiana Supreme Court, in construing a policy exclusion which barred coverage for bodily injury reasonably expected or intended by the insured, stated "[i]n contrast to the insurance policy's insuring agreement that requires the *occurrence* to be accidental, this exclusion more narrowly considers whether the resulting *injury or damage* was intentional or reasonably expected by the insured." *Auto-Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1288 (Ind. 2006) (emphasis in original). Intent to injure can be inferred in certain situations where actual intent cannot be shown, if the nature and character of the act are such that intent to cause harm must be inferred as a matter of law. *Id.* at 1290; *PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705, 729 (Ind.Ct.App.2004), trans. denied. Such inference "applies only where reason mandates that from the very nature of the act, harm to the injured party must have been intended." *Harvey*, 842 N.E.2d at 1290 (quoting *PSI*, 801 N.E.2d at 729). Likewise, "even if the evidence demonstrates a disregard for safety," such evidence is insufficient to warrant exclusion for expected or intended injuries. *Id.* at 1290 (quoting *PSI*, 801 N.E.2d at 728).

Under Indiana law, for Sullivan to bring a claim outside of the Worker's Compensation Act, Sullivan must allege facts demonstrating that HPA deliberately intended to inflict injury or had actual knowledge that an injury is certain to occur and that HPA must have intended the injury. See *Baker*, 637 N.E.2d at 1275 (to bring an intentional tort outside of the Worker's Compensation

18

Act, a plaintiff must show (1) "deliberate intent to inflict an injury, or actual knowledge that an injury is certain to occur," and (2) "the employer itself must have intended the injury."). The only way Sullivan can recover for injuries that occurred in the course of Elliot's employment outside the scope of the Worker's Compensation Act is if the injuries were intentional, such that they did not occur by accident. As the court held in *Baker*, if an action is intended by the employer, it is not an accident and falls outside the scope of the Act. If the *Sullivan* Lawsuit falls outside the scope of the act, HPA must have deliberately intended to inflict injury or intended the injury to occur. If HPA deliberately intended the injury to Sullivan to occur, the Intentional Acts Exclusion necessarily applies. *See Harvey*, 842 N.E.2d at 1288 (holding that an exclusion for damage reasonably expected or intended by the insured "more narrowly considers whether the resulting *injury or damage* was intentional or reasonably expected by the insured.").

Under Seventh Circuit precedent, "if there is no room for 'serious doubt' about how a state's highest court would resolve a question, certification is not appropriate." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001) (citing *Patz v. St. Paul Fire & Marine Ins. Co.,* 15 F.3d 699, 705 (7th Cir.1994)). Here, there is no doubt how the Indiana Supreme Court would apply the Policy's Intentional Acts Exclusion to the present case.

Moreover, the question sought to be certified by HPA is not applicable to this case as the only way the *Sullivan* Complaint can be read to allege a claim outside the exclusive jurisdiction of the Indiana Worker's Compensation Act is for the complaint to be read to allege that HPA intended to inflict injury on Sullivan. HPA contends that the "Indiana Supreme Court, however, has not decided whether the category of 'actual knowledge that an injury is certain to occur' is excluded by the [Intentional Acts Exclusion] of the employer's liability policy." HPA Brief, pg. 9. But the Court need not even address this issue, because to the extent that the *Sullivan* Complaint alleges a

19

claim outside the jurisdiction of the Indiana Worker's Compensation Act, it alleges only that HPA acted with an actual intent to inflict an injury on Sullivan. Such allegations are unquestionably within the scope of the Intentional Acts Exclusion, a fact that HPA does not contest in its brief.

Finally, as stated by the Seventh Circuit, "if a question may not be dispositive to a case, then it is a weak candidate for certification." *Pate*, 275 F.3d at 672; *see also Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 732 F.3d 755, 766 (7th Cir. 2013) ("the most important consideration is whether we find ourselves genuinely uncertain about a question of state law that is key to a correct disposition of the case."). Further, Rule 64 of the Indiana Rules of Appellate Procedure provide that a federal court may "certify a question of Indiana law to the Supreme Court when it appears to the federal court that a proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent." Here, the question sought to be certified by HPA does not determine the outcome of this case, so it does not meet the requirements for certification to the Indiana Supreme Court.

Even if the Indiana Supreme Court were to decide "the question of whether the [Intentional Acts Exclusion] of an employer's insurance policy applies to an employer's intentional tort which meets only substantive-certainty test of intentional torts excluded from the Indiana Workers Compensation Act," the issue of whether the *Sullivan* Complaint alleges a claim outside the exclusive jurisdiction of the Indiana Worker's Compensation Act remains and must be decided by this Court. Should this Court determine, as ICW maintains that it should, that the *Sullivan* Complaint does not allege a claim outside the exclusive jurisdiction of the Indiana Worker's Compensation Act, the issue of the application of the Intentional Acts Exclusion is moot.

Thus, it is unnecessary and improper to certify "the question of whether the [Intentional Acts Exclusion] of an employer's insurance policy applies to an employer's intentional tort which

meets only substantive-certainty test of intentional torts excluded from the Indiana Workers Compensation Act" and this Court should decline to do so.

**IV. Because There Is No Potential for Coverage Under the Policy, ICW Does Not Have a Duty to Defend HPA in the Sullivan Lawsuit.**

Under Indiana law, an insurer is relieved from its duty to defend when the underlying factual basis of a lawsuit, even if proved true, would not result in coverage under the insurance policy. *Cincinnati Ins. Co. v. Mallon*, 409 N.E.2d 1100, 1105 (Ind. App. 1980). "[T]he allegations of the complaint, including the facts alleged, give rise to a duty to defend whenever, if proved true, coverage would attach." *Virk Boyz Liquor Stores*, LLC, 219 F. Supp. 3d 868 at 873 (citing *Fed Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 566 (7th Cir. 1997)). Even if the allegations of the *Sullivan* Lawsuit were proved true, coverage does not attach under the Policy. Although the duty to defend is broader than the duty to indemnify, Indiana law is clear that when "there is no possible factual or legal basis on which the insurer may be obligated to indemnify", an insurer has no duty to defend its insured. *Id*.

If the injuries to Elliot were accidental, Sullivan could not recover anything from HPA because this claim is not being brought under the Indiana Worker's Compensation Act. Further, even if this suit was brought under the Indiana Worker's Compensation Act, the Policy precludes coverage for "[a]ny obligation imposed by a workers compensation … law" so there is no coverage for this matter under the Policy. Conversely, if the *Sullivan* Lawsuit is read as alleging intentional harm on the part of HPA, so that Sullivan could recover outside the Worker's Compensation Act, there is still no coverage under the Policy because the Policy excludes coverage for "[b]odily injury intentionally caused or aggravated by [HPA]." Thus, even if the facts of the *Sullivan* Lawsuit were true, no coverage would attach under the Policy and ICW has no duty to defend HPA for the *Sullivan* Lawsuit.

Either the *Sullivan* Lawsuit alleges negligence such that Sullivan's claim falls within the exclusive jurisdiction of the Worker's Compensation Act and coverage is precluded by the Workers' Compensation Exclusion or the *Sullivan* Lawsuit alleges intentional harm and coverage is precluded by the Intentional Acts Exclusion. ICW does not owe HPA a duty to defend claims that are outside the scope of coverage of the Policy. An insurer's duty to defend is triggered when a complaint alleges facts that might fall within the coverage of the policy. *City of Gary v. Auto-Owners Ins. Co.*, 116 N.E.3d 1116, 1121 (Ind. Ct. App. 2018). The complaint filed in the *Sullivan* Lawsuit does not allege facts that might fall within the coverage of the Policy. Accordingly, ICW has no duty to defend HPA in the *Sullivan* Lawsuit.

**V.      Because the Sullivan Lawsuit Has Not Yet Been Resolved, If This Court Finds a Duty to Defend, It Must Also Find that ICW's Duty to Indemnify Cannot Be Determined Until Resolution of the Sullivan Lawsuit.**

Under Indiana law, an insurer's duty to defend is broader than its duty to indemnify. *Ebert v. Illinois Cas. Co.*, 188 N.E.3d 858, 865 (Ind. 2022). "Consequently, if an insurer does not have a duty to defend, then it does not have a duty to indemnify." *Id*. However, if an insurer has a duty to defend, an insurer's duty to indemnify is not ripe for review on any basis when there has been no finding of liability in the underlying lawsuit. *See Indiana Ins. Co. v. Kopetsky*, 11 N.E.3d 508, 529 (Ind. Ct. App. 2014); *American Bankers Ins. Co. of Florida v. Shockley*, 3 F.4th 322, 331–332 (7th Cir. 2021) (question of whether the insurer has a duty to indemnify is only ripe if the insured has already incurred liability in the underlying lawsuit).

The *Sullivan* Lawsuit has not yet been resolved and there has been no finding of liability on the part of HPA. Therefore, even if the Court finds that ICW has a duty to defend HPA in the *Sullivan* Lawsuit, ICW's indemnity obligations cannot properly be determined until a final resolution of the *Sullivan* Lawsuit. Thus, even if this Court determines that ICW has a duty to

defend HPA in the *Sullivan* Lawsuit, which ICW maintains that it does not, this Court cannot find that ICW has a duty to indemnify HPA at this time.

**VI.     Finding ICW has a Duty to Defend HPA with Respect to the *Sullivan* Lawsuit Disregards the Purpose of the Two-Part Workers Compensation and Employer Liability Coverage Provided by the Policy.**

As stated by the Seventh Circuit, "[a] workers compensation and employer liability policy is a standard liability insurance policy designed to insure an employer primarily for liability under workers' compensation laws, but secondarily for liability for workplace accidents not covered by such laws—for example, liability for a claim by an employee's family member injured by a workplace injury to the employee (as when an injury to a pregnant employee injures her fetus as well), or for claims for workplace injuries not covered by workers' compensation, such as injuries to farm employees or an injury to an employee by a fellow employee motivated by spite." *Hayes Lemmerz Int'l, Inc.* 619 F. 3d at 778-79. "Such insurance coverage fills gaps in workers' compensation law that sometimes allow an employee to sue his employer in tort, bypassing the limits on workers' compensation relief." *Id.*

The employers' liability portion of the Policy under which HPA is now seeking a defense and indemnity, is not intended to provide coverage for workplace accidents covered by worker's compensation laws, as is evidenced by the Policy's Workers' Compensation Exclusion. Instead, the employers' liability portion of the Policy is intended for third party actions for contribution and for liability for workplace accidents not covered by workers' compensation laws. Because the *Sullivan* Lawsuit does not allege a workplace accident not covered by workers' compensation laws and is a direct action by an employee's estate where workers' compensation benefits are already being provided, the employers' liability coverage is not implicated.

<u>**CONCLUSION**</u>

The *Sullivan* Complaint does not set forth any possible factual or legal basis on which ICW may be obligated to indemnify HPA, so ICW does not have a duty to defend or indemnify HPA for the *Sullivan* Lawsuit under the Policy. This Court should, therefore, affirm the district court's judgment granting ICW's motion for judgment on the pleadings and denying HPA's motion for summary judgment.

Respectfully Submitted,

INSURANCE COMPANY OF THE WEST

By:   */s/ William K. McVisk*
          William K. McVisk

William K. McVisk (# 21360-45)
TRESSLER LLP
233 South Wacker Drive – 61st Floor
Chicago, IL 60606-6399
Telephone:  312.627.4000
Fax:  312.627.1717
E-mail:  wmcvisk@tresslerllp.com

**CERITIFICATE OF COMPLIANCE**

The undersigned counsel of record for Appellee Insurance Company of the West furnishes the following in compliance with F.R.A.P. 32(a)(7) and 28.1(e)(3) and Circuit Rule 32(c) for a principal brief produced with the proportionally spaced font. This brief by Appellee contains 7677 words, verified with the "word count" function of Microsoft Word, inclusive of all main text and footnotes and excluding all parts of the brief excluded by F.R.A.P. 32(f).

This brief also complies with the typeface requirements of F.R.A.P. 32(a)(5) and Circuit Rule 32(b) and the style requirements of F.R.A.P. 32(a)(6) because it has been prepared using a proportionally spaced typeface (Times New Roman) in 12-point type for the text.

By: */s/ William K. McVisk*
Attorney for Appellee, Insurance Company of the West

(13149-1) 4925-3958-5399, v. 1

25